# CHARLESTOWN.

F. G. & L. C. JONES v. LEMON *et al.*

Submitted September 9, 1885.—Decided October 2, 1885.

1. It is well settled, that while in cases of direct or express trusts, as between the trustee and *cestui que trust*, the statute of limitations has no application during the continuance and recognition of the trust, yet if the trustee repudiates the trust by clear and unequivocal acts or words, and claims thereafter to hold and control the estate as his own not subject to any trust, and such repudiation and claim are brought to the notice or knowledge of the *cestui que trust* in such manner that he is called upon to assert his equitable rights, the statute will begin to run from the time that such knowledge is brought home to the *cestui que trust*. (p. 634.)

2. Unless there is an express saving in the statute of limitations, no person will come within its exceptions, and the prescribed limitations will operate against persons under disabilities as well as others; and the express exceptions refer only to such disabilities as exist at the time the right of action first accrued; for while, if several disabilties exist together at that time, the statute will only begin to run at the cessation of the last of them, yet if a second disability occur after those then existing have ceased, it can not be pleaded; for it is the settled law that when the statute has once begun to run no subsequent event will interrupt it. (p. 635.)

3. When the subject is land, of which the trustee has the legal title, and the *cestui que trust* is a member of his family living upon the land, if the trustee, asserting title in himself, conveys a part of the land, by deed in his own name, to a third person whom he places in possession of the part so sold and takes the purchase-money to himself, the deed is put upon record and there is no

evidence that the trustee ever thereafter recognized the trust, but on the contrary claimed the residue of the land as his own; these acts and transactions will be regarded as a repudiation of the trust, and the statute of limitations will begin to run against the cestui que trust from that time. (p. 636.)

4. It is not necessary to the assertion of an adverse possession, that the party should be ignorant of the defects of his own title and have no knowledge of the rights of those against whom he claims. He may know he has a bad title and that another has the true title. Still if he occupies and claims the land as his own for the statutory period the title will by operation of the statute be transferred to him. (p. 636.)

A statement of the facts of the case will be found in the opinion of the Court.

*R. W. Monroe* for appellant.

*John Barton Payne* for appellee.

SNYDER, JUDGE:

In July 1851, Joseph Pratt, of Preston county died intestate leaving his widow and six infant children, the oldest being but fifteen years of age and the youngest *in ventre sa mere.* Before his death he had by executory contract purchased a tract of ninety acres of land, the legal title of which was in one Thomas, at the price of $200.00, of which he had paid $150.00. The other $50.00 was paid after his death by his widow in a horse belonging to his estate, and the land was conveyed by said Thomas to her by deed in fee. He resided on this land at his death and left very little, if any, other property. The widow finding herself unable to support herself and helpless children and retain the land, sold twenty acres thereof to Harmon Snider for $120.00, and by deed, dated July 10, 1855, conveyed. the same to him by metes and bounds with general warranty of title and placed him in possession of it. In 1862, she sold twenty-three acres more to to one Bell for $125.00, and in 1866, she, by deed in which a part of her children united, conveyed the same to Costolo and Litzinger who had become the owners of the equitable title sold to Bell. She used the purchase-money derived from said sales for the support and education of her children.

The residue of the land was sold by the widow in 1869 to

Henry J. Snider for the price of $826.00, of which $600.00 was paid in a house and lot conveyed to her and $126.00, of the residue was to be paid when Joseph, one of her children, should attain his majority and transfer his interest in said land to the purchaser.    In the deed conveying this land all the children united except the infant Joseph, and Abraham who was then dead.

By subsequent sales and conveyances the aforesaid twenty acres of land became the property of Charles McGee, the said twenty-three acres the property of David Albright, and the residue of the tract the property of Jackson Snider.

The widow about the year 1855, married one James Lemon who died some time between that date and the year 1869.

Abraham Pratt, one of said six children who was thirteen years old in 1851 when his father, the said Joseph, died, continued to live with and was supported by his mother until he became seventeen years of age, when he left home.    He married at the age of nineteen and died in 1862, at the age of twenty-four, leaving a widow and one child, Flora G., who subsequently married one L. C. Jones.

At the February rules 1881, the said Flora G. Jones and her husband brought this suit in the circuit court of Preston county against the widow and children of said Joseph Pratt and the grantees and owners of said ninety acres of land. The plaintiffs allege in their bill that neither the female plaintiff nor her father ever parted with her interest in said land, that she as the sole heir of her deceased father is entitled to the one sixth part thereof; and the plaintiffs pray that said land may be partitioned and her one sixth assigned to her in severalty, &c.

The defendants, the said widow, Nancy Lemon, and the grantees of the land filed their several answers to the plaintiffs' bill which were replied to generally.    The widow in her answer, after setting out the destitute and sad condition in which she was left with her six helpless children and the sales of the said twenty and twenty-three acres oft the land, says, that she expended the whole of the purchase-money therefor in the support and for the benefit of her children ; that, if she had not made said sales, she would have been com-

pelled to contract debts for the maintenance of her children, for the payment of which the whole of said tract would probably have been sacrificed; that the residue of the tract was sold to the defendant Snider about the year 1869, when all her living children were of age, except Joseph, and all except him joined in the deed and he relinquished his claim to Snider after he became of age without any further consideration; that said deed was so made and signed merely to satisfy Snider, respondent never having had any doubt that she had a right to convey the land herself; that under all the facts and circumstances the land was in all fairness her own; that but for her exertions and sacrifices it would have been lost; that having a deed for it duly recorded, looking only at the equity of the transaction and being ignorant of the rules of common law, she never doubted her exclusive dominion over the land and so spoke of it to those to whom she sold; that she thinks it would be very unjust to her vendees to disturb their title, for their purchases were in good faith for what was at the time a fair consideration and the proceeds of the sales were applied to the purchase of actual necessaries for herself and children including the father of the female plaintiff, who if now living would not in equity be entitled to any interest in said land, because after paying for said land there was no personal estate left with which to raise and educate her children; this she did by her own labor and the whole of said land would not have supported her children as she did in their helpless infancy, &c., &c.

The grantees and owners of said land aver that they were purchasers for value in good faith and without notice of any defect in the bill of their vendor. They insist that the claim of the plaintiffs, if any right of action ever existed therefor, has long since been lost by lapse of time and the bar of the statute of limitations, &c.

The cause, coming on to be heard on the pleadings, exhibits and depositions, the court by its decree of December 8, 1882, adjudged and decided that the female plaintiff was entitled to the undivided one-sixth of the twenty-three acres then claimed by and in the possession of the defendant David Albright and also in the forty-one acres then claimed by and in the possession of the defendant, Henry J. Snider, and appointed

commissioners, to lay off and assign to the said plaintiff her one sixth of said lands in severalty. From this decree the defendants, Albright and Snider have obtained this appeal.

I have thus fully and at length stated the facts and pleadings in this cause, because they more clearly demonstrate the inequitable and ungrateful character of the plaintiffs' demand than could be done in any other manner. The grandmother of the claimant here was left thirty years before the institution of this suit with six helpless children, one of whom was the father of the claimant then but thirteen years old, in an almost destitute condition, having but a small piece of land, then worth about $200.00, and her own labor upon which to raise and support herself and little children. Being by her utmost exertions unable to take care of her children and provide for them the bare necessaries of life, she was compelled from time to time to sell off small portions of this small piece of land as the only refuge from absolute want and suffering. The whole value of the interest of the father of the present claimant in the land at the time would not have exceeded $50.00, not more than sufficient to give him a scanty maintainance for a single year, yet he was supported by his mother for no other pecuniary consideration four years and as soon as he became of an age that he might be of some service to her he went away to act for himself and left her alone to care for and support his younger and still dependent brothers and sisters. Twenty-four years after he had thus left home and abandoned the land, and after all of it had passed into the hands of fair purchasers for value and the proceeds consumed to maintain the family, his daughter brings this suit charging the grandmother with misconduct and fraud and asking a court of equity to have her conveyances declared fraudulent and her vendees deprived of the consideration paid which had been received and enjoyed twenty-eight years before by her father. The mere statement of such a claim is the severest condemnation of its morality and equity.

If the grandmother had applied to a court of equity to have the land sold and the portion of the proceeds to which the claimant's father would have been entitled paid over to her for his maintainance during his minority, no one can doubt

that such disposition would have been made of it. This was in fact done, and as nothing was wanting but mere form to divest the title of the plaintiff's father, the Court now regarding the substance and not the form will ratify and validate what has been done and thus declare the claim of the plaintiff extinguished. *Maguire* v. *Doonan*, 24 W. Va., 507; *Rinker* v. *Striet*, 33 Grat. 663.

Thus much for the morality and equity of the plaintiffs' demand. But in strict accordance with the most technical rules of law and equity jurisprudence, the plaintiffs are entitled to no relief.

Admitting, as claimed by the plaintiffs, that the grandmother by the conveyance of the legal title to her in 1851, became merely a trustee holding the land for the use of her children, what is the result? It is clearly shown, that as early as the year 1855, she unequivocally and positively repudiated the trust by selling and conveying away a part of the land and placing the purchaser in possession. This conveyance was not made as trustee, for as such she could not convey, but it was made in her own right and in positive disregard and denial of the trust. At the time it was done, the father of the female plaintiff was seventeen years of age and living with his mother and must of necessity have been fully cognizant and informed of it. The sale as well as all the transactions connected with it were open and notorious; there was no concealment, the deed was put upon record and the purchaser placed in possession. The mother claimed the land as her own and there is not a particle of evidence in the record that she ever thereafter admitted or recognized any trust or right in her children. The doctrine is well settled, that while in cases of direct or express trusts, as between the trustee and *cestui que trust*, the statute of limitations has no application during the continuance and recognition of the trust, yet if the trustee repudiates the trust by clear and unequivocal acts or words, and claims thenceforth to hold and control the estate as his own, not subject to any trust, and such repudiation and claim are brought to the notice or knowledge of the *cestui que trust* in such manner that he is called upon to assert his equitable rights, the statute will begin to run from the time that such knowledge is brought

home to the *cestui que trust.* 2 Perry on Trusts, § § 863, 864; Ang. on Lim. § 174; *Nease* v. *Capehart,* 8 W. Va. 95; *Cooey* v. *Porter,* 22 *Id.* 120; *Bargamin* v. *Clarke,* 20 Grat. 544; *Rowe* v. *Bently,* 29 *Id.* 756, 760.

In regard to the statute of limitations, the rule is well settled, that unless there is an express saving in the statute, no person will come within its exceptions, and the limitations will operate against persons under disability as well as against others; and the express exceptions refer only to such disabilities as exist at the time the right of action first accrued; for while, if several disabilities exist together at that time, the statute will only begin to run at the cessation of the last of them, yet if a second disability occur after those then existing have ceased, it can not be pleaded, for it is the settled law, that if the statute has once begun to run, no subsequent event will interrupt it. 1 Bar. Ch'y Pr., § 34; Ang. on Lim. §§ 194, 197; *Parsons* v. *McCracken,* 9 Leigh 495; *Caperton* v. *Gregory,* 11 Grat. 505; 1 Rob. (new) Pr. 609.

When the repudiation of the alleged trust was brought to the knowledge of the father of the female plaintiff he was, as we have seen, seventeen years of age. He was then under the disability of infancy; and, while he might have then asserted his right against the claim of his mother, he was not obliged to do so until he became twenty-one years of age, and under the statute then in force he was allowed ten years from that time to bring his action but no longer. Sec. 3, ch. 149, Code of Virginia of 1849, p. 590.

When he arrived at his majority in 1859, the statute commenced to run, and he and the plaintiffs who claim under him became barred of any right of action in 1869, ten years thereafter. The statute having commenced to run against him, his subsequent death and the disabilities of his heir the plaintiff did not interrupt its operation. In 1869, when his right of action would have terminated had he lived, the right of action which through him devolved on the plaintiff also ceased. *Moores* v. *White,* 6 Johns. Ch'y 372; *Eager* v. *Com.,* 4 Mass. 182; 1 Rob. (new) Pr. 609.

The mistake which seems to have been made by the plaintiffs and the court below in this cause is, that they evidently regarded it as necessary to entitle an adverse claimant to

avail himself of the bar of the statute of limitations, that he should be ignorant of the defects of his own title and have no knowledge of the rights of those against whom he claims. Such is not the theory of the law of adverse possession. It is a hostile intention of the actual occupant to hold the land as his own, without reference to the validity or defects of his title, against every other person or title, although he may know that his title is bad and such other person has the true title. *Core* v. *Faupel*, 24 W. Va. 238; *Shanks* v. *Lancaster*, 5 Grat. 110; Tyler on Eject., &c., 872–3.

It was altogether immaterial, therefore, that the grandmother of the plaintiff or her grantees knew that her title was in its origin a mere trust, that while in law she had the legal title, in equity she was simply a trustee. This all became immaterial from the time she repudiated the trust and this fact became known to the plaintiff's father. From that time her possession became adverse—and her grantees are protected by her title notwithstanding they may have had full notice and knowledge of the irregular and tortious origin of her title. It was the repudiation of the trust and the continuous adverse holding, with the acquiescence of the plaintiff and those under whom she claims, that completed the title of the grandmother and barred the right of the plaintiffs.

For the reasons aforesaid the decree of the circuit court must be reversed and the plaintiff's bill dismissed, which is ordered accordingly.

REVERSED.   DISMISSED.