# CHARLESTOWN.

## McKAY *v.* McKAY.

Submitted September 11, 1886.—Decided September 22, 1886.

1. A bill in chancery by proper allegations should show on its face, that proper parties are made to the suit; and if it claims to have set aside a sale made under a decree in another chancery cause, which is ended, for fraud or for other reasons, and that a resale should be made of the land, and the proceeds should be distributed among the parties entitled to such proceeds, so much of the substance of such chancery cause and the decrees in it, as will fully show the character of such suit and its objects, and especially as will show the parties interested in such suit and sale and the disposition of the proceeds, if made by the court, should be set out, so as to give the court definite information as to these matters. (p. 517.)

2. If this be not done, where there is a demurrer to such bill setting out as grounds of demurrer only such grounds, as affect the merits of the cause, and not that the proper parties do not appear to be before the court, and the bill shows on its face a cause, which should be considered on its merits, if the proper parties appeared to be before the court, and these necessary allegations were made, the court should give leave to the plaintiff to amend the bill, and not decide the cause, while in this condition, by sustaining the demurrer and dismissing the bill; and if it does, and the plaintiff appeals, the decree will be reversed, and costs will be given to the appellants; but if the court does give the plaintiff leave to amend his bill and he declines to do so and appeals to this Court, such decree of the circuit court will be affirmed. (p. 523.)

*J. H. Riley* for appellants.

*C. L. Brown* for appellees.

Statement of the case by GREEN, JUDGE:

This was a chancery suit in the circuit court of Jackson county, which on a demurrer to the bill was dismissed by the court. The bill was filed at June rules, 1885, and was as follows:

"The bill of complaint of Florence McKay and Mamie McKay, who sue by Reuben Douglass, their next friend, against Wm. H. McKay, Z. T. McKay, Catherine McKay,

John McKay, John Sayre, Adaline Sayre, Chas. W. Hog-
sett, Flora E. Hogsett, Ephraim Blake, S. E. Blake, Charles
McKay, S. E. McKay, Stephen E. Ward, Nathan Parr and
W. A. Williamson filed in the circuit court of Jackson
county, West Virginia:

"The plaintiffs complain and say that they are infants of
tender years; that their father, Spencer R. McKay, departed
this life on the — day of —, 1876, leaving defendant, S. E.
McKay, his widow and plaintiffs his only children and heirs-
at-law; that their father died seized of six and one half fif-
teenths of a farm situate in said county and known as the
'Rachel Radcliff land,' comprising two tracts, containing to-
gether 150 acres, more or less, which land is particularly de-
scribed in the deed filed herewith marked Exhibit 'A;' that
since their father's death the grandfather, Reuben Douglass,
caused to be conveyed to them and their mother two fifteenths
of said farm, to be held by them in the same way they held
the shares inherited from their father; that their grandfather,
William H. McKay, was by the ——— duly appointed
guardian for plaintiffs and gave bond, qualified and acted as
such guardian; that under a decree of the circuit court of
Jackson county, rendered on the 22d day of March, 1879,
Henry C. Flesher, Esq., and others, special commissioners,
sold said farm on the — day of ——, 1879; that at the time
of said sale these plaintiffs and their mother were the owners
of eight and one half fifteenths of said farm; that defendant
W. A. Williamson owned three fifteenths thereof, Stephen
E. Ward one fifteenth and Nathan Parr owned two and one
half fifteenths thereof; that prior to said sale, while the said
William McKay was acting as the guardian of plaintiffs, he
and Reuben Douglass entered into an agreement whereby
they were to purchase said farm and have it conveyed to
these plaintiffs; that the said Wm. McKay suggested that it
would be better to have a third person do the bidding; that
said Reuben Douglass, relying on the agreement about
the purchase of said land, did not bid on it; that said
William McKay caused the sale of said land to be reported
to him as purchaser, and procured the confirmation of said
sale to him by said court and the land to be conveyed, as ap-
pears by Exhibit "A" filed herewith; that after the con-

firmation of said sale the said William McKay refused to carry out his agreement with said Reuben Douglass, and claimed that he was entitled to hold said land in his own right.

"Plaintiffs say that at the time of the purchase of said farm as aforesaid, the said William McKay was the guardian of these plaintiffs; that there were persons present at said sale able to purchase said land who would have bid more money therefor than the $6,365.00 that was bid on the same, but for the agreement aforesaid between said William McKay and Reuben Douglass.

"Plaintiffs further say that William McKay departed this life on the — day of——, 1883, leaving Catharine McKay his widow and the following children : William H. McKay, Z. T. McKay, Adaline, who has intermarried with John Sayre, Flora E., who intermarried with Charles W. Hogsett, S. E., who has intermarried with Ephraim Blake, John McKay and Charles McKay and plaintiff children and heirs-at-law of Spencer R. McKay, deceased, and grandchildren of said William McKay, now deceased. Plaintiffs are advised that the fiduciary relation of said William McKay, as guardian of plaintiffs, was such that he could not be the purchaser of their property, or if he did, that the sale would be avoided at their instance, and that his failure to carry out the agreement with Reuben Douglass was contrary to equity, and that for that reason also the said sale will be avoided.

"Plaintiffs therefore pray that the sale of said farm made by said commissioners to William McKay aforesaid and the deed made in pursuance of said sale exhibited with this bill, dated September 22, 1881, be vacated, annulled and set aside, and that said farm may be re-sold and the proceeds distributed amongst the several parties entitled thereto as their interests may appear, and that an account may be taken of the rents and profits of said farm since said sale. They also ask such other, further and general relief as the court may see fit to grant."

At the next term of the court the defendants filed a joint demurrer to this bill, in which the plaintiffs joined, and at a subsequent day of the same term the defendants filed a joint answer, and during the same term of the said court, on Au-

gust 19, 1885, the court decided the cause on the bill and demurrer only sustaining the demurrer and dismissing the bill at the plaintiffs' costs.   The demurrer assigned ten grounds of demurrer; but I do not deem it necessary to set them out further, than they will be stated in the opinion of this Court; nor do I deem it necessary to state or refer to the contents of the joint answer of the defendants further, than they will be stated in the opinion of this Court, as the cause was decided in the court below on the bill and demurrer without considering their answer.   The final decree was as follows:

"The defendants, William H. McKay, Z. T. McKay, Catherine McKay, John McCay, John Sayre, Adaline Sayre, Charles W. Hogsett, Florence E. Hogsett, Ephraim Blake, S. E. Blake, Charles McKay, S. E. McKay, Nathan Parr and W. A. Williamson, having tendered their joint demurrer to the plaintiff's bill on a former day of this term, which demurrer was filed, and on motion of the said plaintiff, set down for argument, and in which demurrer the said defendants joined and which demurrer was supported by the joint answers of the said several defendants, which answer is now filed, and the said demurrer being argued by counsel and maturely considered by the court, the court is of opinion to sustain the same.   It is therefore adjudged, ordered and decreed by the court that the said demurrer be and the same is hereby sustained and allowed; and the said plaintiff, by counsel, here in court declining to proceed further in this cause, it is further adjudged, ordered and decreed that the plaintiff's said bill be and the same is hereby dismissed, and the defendants do recover from the said Reuben Douglass their costs by them in their defence in this suit expended, and execution may issue therefor."

From this decree the plaintiffs obtained from this Court an appeal and *supersedeas.*

GREEN, JUDGE:

If we were at liberty to construe the bill in this cause, which was dismissed on demurrer at the plaintiffs' costs, as we would construe a deposition, and draw from it all probable inferences of facts, we might conclude, that the facts intended to be set out as the basis of the plaintiffs' claim for

relief were as follows: Spencer R. McKay, Reuben Douglass and some other person or persons, whose names are not stated in the bill, owned as tenants in common a farm in Jackson county West Virginia, known as the "Rachel Radcliff land" consisting of two tracts of land containing together about 150 acres. Spencer R. McKay owned thirteen thirtieths of this farm; other persons whose names do not appear, owned thirteen thirtieths thereof, and the remaining four thirtieths of it were owned by Reuben Douglass. Some time in 1876, Spencer R. McKay died intestate leaving a widow, whose name is not stated in the bill, and three children, the two plaintiffs and one of the defendants, S. E. McKay. Reuben Douglass, who was the father of this widow, conveyed to these three children of Spencer R. McKay and to his widow his interest in this tract of land. I suppose, that this was a deed of gift, and that it conveyed his interest in this farm to his three grandchildren, the children of Spencer R. McKay deceased, in fee simple, but subject to a life-estate by this deed given to the widow of Spencer R. McKay, the daughter of the grantor, in one undivided third part of the interest (four thirtieths) of the grantor in this land, that is, to a life-estate in four ninetieths of this tract of land, and that this widow probably died before the institution of this suit owning this interest in this land as well as her dower interest in the same; that on the 22d day of March, 1879, the circuit court of Jackson in some chancery suit, the parties to which either plaintiffs or defendants are not stated in the bill, nor is the character or object of the bill at all stated in the bill, rendered a decree ordering the sale of this land by special commissioners. How many of them there were is not stated in the bill; but it is stated, that Henry C. Flesher was one of them; and exhibit A filed with the bill shows who the other commissioners were but shows nothing more either as to the objects of the suit, or who were plaintiffs or defendants in it, except that one Florence McKay was one of the plaintiffs. She might have been this widow or might have been one of the plaintiffs in the cause now before us or might have been a creditor of Spencer R. McKay, or a creditor of some of the persons, who were tenants in common of this farm, and whose names are not stated. The

exhibit does not state, who she was; and it further shows that Simon Williams was one of the defendants in this cause, but who he was or even the names of the other defendants are not stated. These commissioners at some time in the year 1879, sold this farm at public auction, and when said sale was made, the other tenants in common of said land, other than said widow and children of Spencer R. McKay, were W. A. Williamson, Stephen E. Ward and Nathan Parr, defendants in this present suit, Williamson owning six thirtieths of said farm, Ward two thirtieths and Parr five thirtieths. How any of these parties acquired any title to any part of this farm is not stated. And when said sale was made William McKay, the father of Spencer R. McKay deceased was acting as guardian of the plaintiffs, his grand children.

Prior to said sale he and Reuben Douglass, also the grandfather of the plaintiffs, entered into an agreement, whereby they were to purchase this farm at this public sale and then convey it as a gift to the two plaintiffs', their grandchildren ; but it probably meant to say a gift to their grandchildren, that is, the two plaintiffs and the defendant S. E. McKay; and the said William McKay, their grandfather and gaurdian, suggested to Reuben Douglass, that it would be better to have a third person to bid for them at this sale, which was done ; and because of this arrangement Reuben Douglass, the grandfather of the plaintiffs, did not bid ; and William McKay had a report made, as if he were the sole purchaser of this farm at this sale, the price bid being $6,365.00; and that this sum was less than its value, other persons declining to bid, because it was understood that it was desired by the grandfathers of these children to buy the farm for them. This sale was confirmed by the court in said cause, and the land was conveyed by one of the commissioners, Henry C. Flesher, on September 22nd. 1881, to Wm. McKay. He then refused to carry out his agreement with Reuben Douglass, the plaintiffs' grandfather, or to convey the land to them but claimed it as his own land. He died in 1883, I presume intestate, leaving a widow and a number of children and grandchildren, who claim this farm as his heirs and are made defendants.

The bill asks, that this sale and this deed to William Mc-

Kay may be set aside and vacated and annulled; that this farm may be re-sold and the proceeds distributed amongst the several parties entitled thereto, as their interests may appear; and that an account may be taken of the rents and profits of said farm since said sale. The bill also asks for general relief. An examination of the bill will show, that these facts, which it is probable the plaintiff intended to state in this bill, are so defectively stated as to render it improper for the court to render a decree thereon. There is a marked uncertainty in the allegations of the bill. For instance, whether the widow of Spencer R. McKay was living or dead at the time this suit was instituted is not stated in the bill. And we have inferred, that she was probably dead, simply from the fact, that she was not made a defendant to this bill, which she obviously ought to have been, if she were living. From the statements in the bill but for this failure to make her a defendant the inference would be, that she was living, as the bill expressly states, that she was living and had an interest in the land, when this public sale was made. There are other extremely vague and uncertain statements in the bill. It undertakes to state, who were the owners of this farm at the time of this sale, and what was their respective interest in it then, and when it is re-sold, if this should be ordered, I presume they desire the court to distribute the proceeds of such re-sale in this proportion among those parties, who, the bill says, were owners of this farm at the time of this public sale. But there is no sort of statement in the bill as to what were the objects of the chancery cause, in which this farm was sold at public sale by order of the court. For all that appears, it may have been a creditors' bill to enforce liens upon the land, in which case of course the creditors, whose liens were sought to be enforced, would also have been obviously necessary parties in the suit.

Again it was obviously necessary in such a bill as this not only to set out the character of the chancery cause, in which this public sale is now sought to be set aside, was made, so that this Court might see, who were the parties interested in the public sale, and who were proper parties in the cause, but it should have stated, what disposition had been made by the chancery court of the proceeds of the public sale; for

if it is set aside, as asked, it is obvious, that those, who have received these proceeds, whoever they may be, are necessary parties to the suit, as they would have to refund the proceeds of such sale, if the sale should be set aside, and are obviously interested in the objects of this suit and should be made defendants.

It seems to me, that it is obvious, that the court would have erred, if, this bill being taken for confessed, it had proceeded to render any decree in the cause, because on the face of the bill the widow of Spencer R. McKay, who, so far as the bill showed, was still living, was a necessary party to the cause, and from the statements in the bill the parties interested in setting aside said public sale did not appear, much less did it appear, what their respective interests were; and the court could not assume, that, because the ownership of the parties at the time of said public sale of this farm was alleged to be in certain parties, they were the parties entitled to the proceeds of the same farm; as they might be well the owners of the farm and yet not entitled to the proceeds thereof, as it may well have been directed to be paid to judgment-creditors or others having liens on the said farm, which liens may have been ascertained in the chancery cause referred to indefinitely in the bill, under a decree in which cause said public sale may have been made.

The court in such a bill ought not to have decided the cause on its merits because of the apparent absence of necessary and interested parties; but upon the demurrer without considering the cause or its merits it should have sustained the demurrer because of the defects in the bill above pointed out. But the court in such case should have stated on the face of such decree, that the demurrer was sustained, because the necessary parties defendants were not before the court, and because the necessary allegations were not made as to the objects of the chancery suit, in which such public sale of said farm had been made, nor the parties to this chancery nor the disposition, which had been made by the court of the proceeds of the sale, all of which were absolutely necessary to be stated, in order to grant to the plaintiffs the rights they sought, even if they were entitled to any relief. And the court should have given to the plaintiffs leave to

amend the bill and make the necessary allegations in the bill and additional parties, if additional parties should be necessary, when the definite and necessary allegations should be made in the amended bill. Had this been done, doubtless the plaintiffs would have filed an amended bill, so that the cause could be properly heard on its real merits. The plaintiffs, it was apparent on the face of the bill, could· have readily made all the necessary allegations and parties to enable the court to try this cause on its real merits; and in fact most of these allegations appear in the answer filed by the defendants, though most of them are therein stated so vaguely, that, even had they been incorporated in the bill, it would still have been too vague and uncertain.

In this answer it is for instance stated, that the chancery cause referred to in the bill was a suit for the partition or sale of this Radcliff farm, in which it was decided, that it was not susceptible of partition, and that a considerable portion of the purchase-money has been paid, it is presumed, by orders of the court in said chancery cause to the parties therein found to be entitled to the same. But of course in deciding on the demurrer to this bill we can not look at this answer, filed subsequently to the filing of the demurrer, to aid defects in the bill. The cause was heard and decided on the bill and demurrer only and not upon the answer. And therefore it is, so far as this cause has proceeded, entirely immaterial, that no replication was filed to the answer. This may be done, when the cause is remanded to the circuit court, if the plaintiffs choose then to file a general replication. This Court has frequently held, that, when the bill sets out a cause, which the court would consider on its merits, if the proper parties were before the court, and the necessary allegations in it were made with the requisite degree of clearness and certainty, upon a demurrer to the bill the court instead of deciding the cause on its merits should grant the plaintiff leave to amend his bill in a reasonable time to be fixed by the court, and if he fail to do so, it should sustain the demurrer and dismiss the plaintiff's bill; and, if instead of so doing it decides the cause on its merits, this court without considering the cause on its merits will reverse the decree of the court dismissing the bill and remand the cause to

the circuit court with directions to give the plaintiff leave to amend his bill. (*Jordan Morris and others* v. *Willougby and Lemon, executors of Lucy Baylor and others, supra* 336).

It may be said, that the plaintiffs did what was the equivalent of declining to amend their bill in this cause, as on the face of the decree it appears, that, after the court had sustained the demurrer, the plaintiffs declined to proceed further in the cause, and therefore the bill was dismissed at the plaintiffs' costs.   This would doubtless be true, if the court had in this decree set out, that it was of opinion, that the bill was fatally defective because of absence of proper parties, and because there was not in it proper allegations to enable the court to dispose of the cause or do justice to the parties, even if the plaintiffs had a right to have said public sale set aside, and the plaintiffs had then declined to proceed further with the cause.   But, if the court decided the cause on its merits despite the fact, that the requisite parties were not before the court, the fact, that the plaintiffs declined to proceed further in the cause, can not be regarded as abandonment of their suit, when it is brought to this Court.   It is but fair to presume, that the court below did not sustain the demurrer in this cause because of any defect in the form of the bill or the failure to make the allegations we have pointed out as necessary, or to make the proper parties defendants, as it does not, as it should in such case, so state on the face of its decree, but especially because in the demurrer to this bill ten causes of demurrer are set forth specifically, and no one of them alleges that the bill is defective because of want of proper parties, or because the necessary allegations, such as we have pointed out, are not contained in the bill.

When the bill is amended, these necessary allegations should not only be made but should, at least as far as the decrees made by the court in the chancery cause referred to, be sustained by copies of the decrees in said chancery cause filed as exhibits with the bill, so as to give the Court in deciding this cause definite knowledge as to what has been decided and done in that cause, without which it will be impossible to decide this cause on its real merits.

For these reasons I am of opinion, that the decree of the circuit court in this cause ought to be reversed, and the cause

remanded to the circuit court to give to the plaintiffs leave to amend their bill in a reasonable time to be fixed by the court, and make additional parties, if necessary to the suit, as well as more definite allegations in their bill, as well as additional allegations such as are indicated in the above opinion, a copy of which should be certified to the court below.

The other judges concur in the views of the law expressed in this opinion; but they construe the decree rendered in this cause as sufficiently showing, that the circuit court did give the plaintiffs leave to amend their bill, and that they declined to do so; and so construing this decree they are of the opinion, that the decree of the circuit court should be affirmed, and that the appellees should recover of the appellants their costs in this Court expended and $30.00 damages.

If the construction given to the decree of the court below by the other judges be right, the decree of the court below ought to be affirmed; and such decree will be entered.

AFFIRMED.