# CHARLESTON.

## VANWINKLE v. BLACKFORD.

Submitted January 17, 1890—Decided March 22, 1890.

1. PERSONAL REPRESENTATIVES—LIMITATION OF ACTIONS.

When such an officer of a town as the treasurer of a special public fund dies, and thus dissolves the relation between himself and the town, and his personal representative terminates the trust by delivering up all the securities, books and papers belonging to the office, to his successor in the office, together with full information and evidence of the decedent's exact indebtedness to the treasury, so that an action at law could be maintained on this indebtedness against his personal representative,

then, such representative is entitled to plead the bar of the statute of limitations, beginning to run, at least, from the date of his qualification, and discharge or termination of the trust, in the manner above mentioned.

2. PERSONAL REPRESENTATIVES—LIMITATIONS OF ACTIONS.

If after he has been removed, on his own motion, such personal representative as a volunteer pays a balance of the debt due by said defaulting treasurer at a time when the bar of the statute would have applied in an action at law on the deceased treasurer's official bond, he can not recover the sum so paid from the estate of the decedent, either by action at law or suit in equity.

3. PERSONAL REPRESENTATIVES—LIMITATIONS OF ACTIONS.

In this State the administrator, by his verbal promise, can no more prolong the vitality of a debt of his decedent, not yet barred, beyond the limit of the statutory bar, than he can revive a debt already barred; neither has he any option about protecting the estate by interposing the statute of limitations, when applicable.

4. PERSONAL REPRESENTATIVES—LIMITATIONS OF ACTIONS.

The personal representative having paid $850.00 a portion of the debt due by the defaulting treasurer, before the bar of the statute would apply to an action on the decedent's official bond as treasurer, it is held that he was not bound to wait to be sued on said bond but might and should pay the debt, if admitted to be justly due, and credit himself with the payment in his settlement.

5. PERSONAL REPRESENTATIVES—BAR.

The fact, that upon an *ex parte* settlement of his accounts before a commissioner, under chapter 87 of the Code, the County Court has erroneously disallowed a credit for the said $850.00, and that, on appeal, the Circuit Court has confirmed this action of the County Court, does not constitute a bar to an original bill in chancery on the part of the said personal representative to correct or falsify the said error of the County Court.

6. PERSONAL REPRESENTATIVES—PARTIES.

In the present case, all the facts essential to the granting of the proper relief to complainant having been set out fully in the bill, such relief might and should be administered under the prayer for general relief, if the proper parties were before the court ; but such not being the case, the demurrer to the bill should be sustained, and the plaintiff permitted to amend, and, if he so elect, to ask for a settlement of his whole administration account, specifying particularly the error in former *ex parte* order of the County Court in disallowing credit for the payment of the $850.00 above mentioned, and taking care to bring all parties interested in the settlement of his administration account before the court.  p. p. 28, 29.

*O. Johnson* and *W. N. Miller* for appellant.

*R. H. Smith* and *J. A. Hutchinson* for appellee.

LUCAS, JUDGE:

This suit was instituted in the Circuit Court of Wood county at January rules 1889, by W. W. VanWinkle, in chancery, against Godwin L. Blackford, administrator *de bonis non* with the will annexed, of the estate of Peter G. VanWinkle, the city of Parkersburg, and John S. Camden, W. N. Chancellor and W. W. VanWinkle, trustees of the sinking fund of the said city.

The bill sets out that on October 29th, 1855, the town of Parkersburg, for the purpose of raising money to pay its subscription to the capital stock of the Northwestern Virginia Railroad Company, passed an ordinance providing for the isue of certificates of loan, and for the purpose of providing for the payment of such loan, provided by said ordinance for the appointment of two persons, who, together with the president of said town for the time being, should constitute a board of trustees of a *Sinking Fund* provided for in said ordinance. The ordinance is exhibited with the bill as a part thereof. It is further alleged in the bill that on the 6th day of May, 1859, the late Peter G. VanWinkle, with Wm. L. Jackson, were by ordinance or resolution of the president, recorder and trustees of said town of Parkersburg, appointed trustees of said sinking fund provided for in the ordinance first aforesaid, who entered on their duties as such. Said Peter G. VanWinkle was constituted treasurer of said trustees, and *on the 4th day of June*, 1859, *he gave a bond as such treasurer* in compliance with said ordinance, with James Cook and W. L. Jackson, his sureties, in the penalty of $10,000.00, conditioned for the faithful discharge of his duties as such, and for paying over to the order of said trustees of said sinking fund, or a majority of them, all money, securities and other property which should come to his hand as such treasurer, which bond was approved subsequently by the town council, and continued to be such trustee and treasurer until the day of his death, *on the 15th day of April* 1872. It is further represented that after the death of P. G. VanWinkle, J. B. Jackson was appointed by said city council as his successor as trustee, and W. N. Chancellor was constituted treasurer of said board to

succeed said P. G. VanWinkle, and has continued to be such treasurer from thence hitherto, and in 1881, on the resignation of said J. B. Jackson, the plaintiff was appointed a trustee to succeed him, and the present board of trustees now consists of John S. Camden, present mayor of said city of Parkersburg, W. N. Chancellor and the plaintiff. The bill charges further that at the date of the death of said P. G. VanWinkle, on the 15th of April, 1872, he *stood in default* to said sinking fund as trustee and treasurer, and he and his estate have continued in default to said sinking fund, in the sum of $2,302.71, and neither the said Peter G. VanWinkle, in his lifetime, nor his personal representatives since his death, have kept and performed the said bond to faithfully account for and pay over to the order of said trustees all money, securities and other property which came to his hands as such treasurer in the particulars herein set forth; and so the condition of the said bond was and is broken and right of action hath accrued thereon. Although P. G. VanWinkle was in default as aforesaid to said sinking fund, he in fact had made and signed three several notes or single bills, two of which the plaintiff signed with him as surety, one dated the 2d day of November, 1870, for the sum of $734.57 bearing interest from date, and the other dated on the 1st day of June, 1871, bearing interest, for the sum of $1,017.32 and payable to the trustees of the sinking fund and the third of said notes or single bills, signed by John V. Rathbone, with said Peter G. VanWinkle as the latter's surety, dated on the 30th day of December, 1871, for the sum of $550.82, bearing interest. But it is charged that the said *"notes"* in point of law were never delivered, so as to become binding obligations as such on the said Peter G. VanWinkle, the same having remained in his possession as treasurer and one of the payees therein from the time of their execution till the day of his death, *when they, together with other papers and securities belonging to said board of trustees, were turned over to the said W. N. Chancellor, the succeeding treasurer, by the plaintiff, as administrator, with the will annexed, of P. G. VanWinkle..* The complainant in further statement of his case, alleges that after the death of said P. G. VanWinkle, complainant was duly appointed and qualified as his adminis-

trator with the will annexed, on *the* 13*th day of May*, 1872, and entered upon the discharge of his duties as such administrator and continued in the administration of said estate until *the* 24*th day of April*, 1883, when his powers as such administrator, on his own motion, were revoked, and the defendant, Goodwin L Blackford, was subsequently appointed administrator *de bonis non*, with the will annexed, of the said P. G. Van-Winkle, deceased, and continues in the adminsitration of the unadministered assets of said estate. In the course of plaintiff's administration of said estate, he paid out of the funds that came into his hands to be administered, on account of the amount in which the said P. G. VanWinkle was in default to said sinking fund, whereof he was treasurer and a trustee as aforesaid, the following sums : the sum of $1,454.82 on July 11, 1878 ; $82.72, on the same date ; $849.28, on the 18th day of January, 1881, and $850.00 *on July* 18*th*, 1881, aggregating $3.206.82.

Plaintiff further represents that not having funds of the said estate to pay the balance of the amount so in default by the said P. G. VanWinkle, trustee and treasurer of said sinking fund as aforesaid, and *having promised and agreed with the said W. N. Chancellor* to pay the balance due upon said default, which was a balance claimed by the said Chancellor to be due and owing on the note of $734.57 aforesaid, plaintiff paid out of his own individual money, on or about *the* 18*th day of May*, 1884, $297.41. The plaintiff charges that by virtue of the payment so made by him as aforesaid out of his individual funds, he became and is the equitable owner of the debt due in default by the said P. G. VanWinkle, to the said city of Parkersburg, or the trustees of the said sinking fund, and is entitled in a court of equity to be declared the equitable owner of said debt, and to have a decree against the estate of the said decedent for the amount so paid, with interest thereon.

The complainant then proceeds to charge that on settlement of his administration-account, under supervision of the County Court, the item of credit for the payment of $850.00, made as stated above on *the* 18*th of July*, 1881, *was disallowed upon the ground of the statute of limitations, more than ten years having elapsed since the maturity of the " note " upon mhich the payment was made.*

The complainant, however, alleges, as an answer to the bar of the statute, that before such bar accrued he had promised and agreed as administrator aforesaid with the said W. N. Chancellor, the treasurer of the said sinking fund, and *by said promise bound the said estate to pay the amount due the said sinking fund and represented by the said alleged " note."*

The bill avers further, that the complainant took an appeal to the Circuit Court from the order of the County Court disallowing the credit claimed of $850.00, and the Circuit Court confirmed the judgment of the County Court, *on the 7th of March,* 1888.

Having thus stated the facts which underlie the claim for relief in equity, the plaintiff states that claim in such clear and concise language as to leave no doubt as to its nature and extent, as embraced by the special prayer of the bill. He charges that having been denied credit in his fiduciary accounts, and having paid said sums, he has become individually the *equitable owner* of so much of said sums in which said P. G. VanWinkle stood in default at the time of his death to said sinking fund, a trust-fund, as is represented by the payment of $850.00 aforesaid, and is entitled to all the rights and remedies which had accrued to the said city of Parkersburg or the said trustees of said sinking fund against the estate of said P. G. VanWinkle, and is entitled in this suit to a decree not only to recover against that estate the said sum of $297.41, but also the sum of $850.00 aforesaid.

The bill was demurred to as not sufficient in law, and the Circuit Court sustained the demurrer, and dismissed the bill.

From this decree, rendered on the 17th day of August, 1889, an appeal has been taken to this Court.

Fortunately for us the bond for $734.57, which is described in the bill as a note came under the consideration of this Court at a former term in the case of *Van Winkle* v. *Blackford,* decided on the 23rd of October, 1886 (see 28 W. Va. 672). That laborious and eminent jurist, the late Judge T. C. Green, gave to this bond a searching and exhaustive discussion, and came to the conclusion that it was absolutely " void *in toto* and entirely incapable of being enforced, either in a court of law or equity." So far, thereiore, as this *bond* is concerned, we may dismiss from the discussion all further reference to it, or

to the effect of a *verbal* promise by the administrator of P. G. VanWinkle, to pay *it.* We may regard that question as set at rest by the aforsaid opinion of this Court as delivered by Judge GREEN. The plaintiff paid this bond in two instalments, one of $850.00, on the 18th day of July, 1881, *while he was still the administrator,* and the residue as a volunteer on the 18th of May, 1884, amounting to $297.41, *after he had been removed at his own request.*

Let us first discuss and consider the claim of the plaintiff to recover the amount of $279.41, which he paid on May 18th, 1884, without request, as a mere volunteer.

As to this it was decided, in the case in the 28th W. Va. already cited, that it could not be recovered in an action of *assumpsit,* because it was a mere voluntary payment on the plaintiff's part, without any request, either verbal or written on the part of P. G. VanWinkle. (28 W. Va. 694.)

It is contended however, that the debt was a *fiduciary* debt, against which the statute did not apply, and that this indebtedness was existing in full force and vigor against the estate of the deceased treasurer, P. G. VanWinkle, when the plaintiff made the payment, as a volunteer, for which he now seeks to recover.

The force and effect of Judge GREEN's opinion is met by the apellant, by citing a former opinion of the same distinguished Judge, delivered in *Neely* v. *Jones,* 16 W. Va. 625, where it was said, in substance, that a stranger who pays a debt without the request or authority of the debtor, when the payment is not afterwards ratified, may, if he chooses, bring a suit in equity, stating this fact and praying that if the payment be not ratified by the debtor, *the debt may be enforced in his favor as the equitable owner thereof ;* or, if the payment be ratified by the debtor, that the court will decree to the stranger re-payment of the amount so advanced by him for the use of the debtor, *and the court will give the one relief or the other prayed for.* In the view I take of this case, it is not necessary to inquire whether there is any conflict between the principles laid down in these two opinions of Judge GREEN. If the debt which the stranger volunteers to pay, and does pay, be one which has, by reason of lapse of time, lost its vitality and obligatory force against the debtor, no one

will contend that a volunteer can *revive* it by its payment. Such payment might give him a strong appeal to social or commercial obligation, but could not create a demand enforceable in a court of law or equity.

The question then arises as to whether the debt of the defaulting treasurer, for his default, was an existing debt when the plaintiff paid it on May 18th, 1884? Peter G. Van-Winkle, the defaulting treaserer, died on the 15th of April, 1872; the plaintiff qualified as his administrator with the will annexed about one month afterwards. At the time of his death P. G. VanWinkle was largely in default to the sinking fund, but this was all subsequently paid off by his administrator, except the amount of $297.41, now under discussion. A little over *twelve years* from the death of P. G. VanWinkle, therefore, had elapsed when the plaintiff, on the 18th of May, 1884, made this payment of $297.41. *If at that time the debt was barred, the plaintiff, it is admitted, can not recover.*

Formerly, in technical trusts where the legal title was in the trustee, the trust, if of realty, devolved at the death of the trustee upon his heir; if of personalty, upon his personal representative. Willis on Trustees, 53. See Code 1887, ch. 131, sec. 6.

But, in the case of a *public officer*, the office is not property, and the trust terminates at the death of the incumbent, or, at all events, when his administrator discharges the trust by turning it over to his successor. So that when the treasurer, P. G. VanWinkle, died, on the 15th of April, 1872, the relation ceased, and the trust was discharged by his administrator as soon as he qualified and turned over all the books and trust-property to the succeeding treasurer. Thereafter, his debt to the sinking fund was, as a fiduciary debt, preferred perhaps, in order of administration, but was subject to the bar of statute of limitations. While the doctrine is well settled that in cases of direct or express trusts, as between the trustee and *cestui que trust*, the statute of limitations has no application, yet this rule is further qualified and limited in its effect to the period "*during the continuance of the trust.*" *Jones* v. *Leman*, 26 W. Va. 629; 2 Perry on Trusts, §§ 863, 864; *Rowe* v.

*Bently*, 29 Gratt. 756; a case approvingly cited in *Jones* v. *Leman, supra*.

In Angel on Limitations, the rule is thus laid down:

"Trusts in their strict and technical sense, are known only in equity; and falling as they do, in such a sense, within the peculiar and exclusive jurisdiction of a court of equity, the doctrine has been long established, *that so long as they subsist* they can not be reached as between trustee and *cestui que trust*, by the statute of limitations." Ang. on Lim. § 166.

But when the trust-relation has been terminated by death or other sufficient discharge, the [liability of the decedent's estate is then defined by the same author: "But if money has been invested in personal securities by the testator in trust, and kept separate from his general estate, and they come into the hands of the executor, with the express trust on their face, they are in equity to all intents and purposes the property of the *cestui que trust*, and subject to a suit by him for specific delivery; and, if instead of subsisting in the hands of the executor as executor, it has become a mere money-transaction, although originating in a trust, it then assumes the character of a debt, and the *cestui que trust* is a creditor, subject to be barred by the statute." Ang. on Lim. § 177.

So Mr. Hill, after stating the general doctrine as above, adds: "However, these observations apply only to cases *where the relation of trustee and cestui que trust is still subsisting.*" Hill on Trustees, 264.

Where the trust terminates by renunciation, the same rule has been applied. In *Wickliff* v. *City of Lexington*, the court said: "It is argued however, that in cases of trusts there is no limitation, and that the lapse of time does not bar their claim against the city. This doctrine, however, applies alone to cases where there is a direct, express and *subsisting trust of a purely equitable nature*, and not to cases where the trust which once existed has been violated, and a suit is brought to obtain redress for the injury resulting from the breach of trust." 11 B. Mon. 161.

The present case is not a case of exclusively equitable jurisdiction. As between the city and the defaulting officer, an action at law, if brought in time, could have been main-

tained, hence the court of equity must apply the same rule of limitation which a court of law would have applied. In *Bond* v. *Hopkins*, 2 Schoale & Lefroy, 428, Lord RODESDALE said : "If the equitable title be not sued upon within the time within which a legal title of the same nature ought to be sued upon to prevent the bar created by the statute, the court, acting by analogy to the statute, will not relieve. If the party be guilty of such *laches* in prosecuting his equitable title, as would bar him if his title were solely at law, he shall be barred in equity." "Where a personal action is barred in the common law courts, and a bill for relief is prayed in a court of equity, the latter court will decree the party to the barred by the statute of limitations." Blanchard on Stat. Lim. 80 ; (Law Lib. vol. 1); Wood on Lim. 108.

It is not necessary to decide whether the statute would run against this claim during the life of the treasurer, nor to decide anything in regard to express technical trusts, cognizable only in courts of equity ; but, simply, that when such a municipal officer as the treasurer of a special fund dies, and thus dissolves the relationship between himself and the town, and his personal representative terminates the trust by delivering up all the securities, books and papers belonging to the office to his successor, together with full information and evidence of the decedent's exact indebtedness to the treasury, so that an action at law could be maintained on this indebtedness against his personal representative, then such representative is entitled to plead the bar of the statute of limitations, beginning to run at least from the date of his qualification and discharge or termination of the trust in the manner above mentioned.

This position is in accordance with the principles usually applied to other constructive trustees, such as guardians; Amended Code, chap. 104, sec. 7; administrator, *Hoge* v. *Vintroux, &c.*, 21 W. Va., 1; executors, *Webster* v. *Webster*, 10 Ves. 93 ; partners, *Forman* v. *Brooks*, 9 Pick. 212 ; *Knox* v· *Gye*, L. R. (English) 5 H. of L. 656.

*Lee* v. *Peachey*, 3 Call 220, was a *motion* against a sheriff for clerk's tickets, and it was objected that the motion was barred by the statute, and in argument it was there contended that it was a "*trust*;" but the court did not so hold,

but held the motion would be barred when right of action on the official bond was extinguished.

In *Cox &c* v. *Thomas's adm'x.*, 9 Gratt. 323, it seems to be conceded that the statute runs in favor of a sheriff's personal representative in an action for failing to pay over money collected on execution.

But the case most nearly analagous to this, among all that I have examined, and they have been numerous, is the case of *State ex. rel. Van Wyck* v. *Norris*, 15 S. C. 241. This was an action on the bond of the defendant, as commissioner in equity—an office similar to our general receiver.

In the syllabus, page 242, point 5, the law is thus stated: "Where a commissioner turned over his office, bank-book &c., to his successor, claiming to withhold nothing, the statute of limitations then commenced to run in his favor against person, having funds in his hands, the provisions of the law which imposed upon him the duty of making a complete transfer being equivalent to a demand." In delivering the opinion of the Court Judge Fraser said: (p. 257, date 1880.) "Trustees are not the only persons who are entitled to the benefit of the statute, and, therefore, it is not important to determine whether the commissioner in equity was or was not a *trustee.* He was, however, a public officer to whom was entrusted by law the collection and custody of the money of others, and the care and custody of their bonds and other property.

"The law is too well settled to make any reference to authority necessary that when a trustee does not act which purports to be a termination of his trust, it gives currency to the statute from the time of such an act. This act may be simply an act done in a public office, in which, by law he must render an account of his trust. When the act purports to be *a complete termination of the trust,* he henceforth holds adversely, and at the end of the statutory period all further account is barred."

In the case of *Ware &c.* v. *the State, ex rel Long, &c.*, 74 Ind. 181, it was held that—"When the auditor of a county drew a warrant in his own favor for one thousand dollars, as a pretended loan from the congressional township school-fund, and received the money, a cause of action at once ac-

crued on his bond, and a suit thereon, commenced more than three years thereafter is barred by section 211 of the Code."

The default of the treasurer, P. G. VanWinkle, became a debt due by simple contract, and action might have been brought upon it as such. 2 Pomeroy's Eq. § 1080. Had such action been instituted, the personal representative could have pleaded effectually the bar of five years. Amended Code, chap. 104, secs. 6 and 12. This plea, in such an action, would have extinguished the debt on or about the 13th of May 1877.

On the other hand, if the authorities had proceeded on the treasurer's *official bond* by action at law, as they might have done, the bar would have applied at the termination of *ten years* from or about May 13, 1872, that is to say, on or about the 13th of May, 1882.

Therefore, on the 18th of May, 1884, when the plaintiff as ex-administrator volunteered to pay this balance of $297.41, the debt was effectually barred by the statute in an action at law, whether on a simple contract or on the official bond.

And, as we have already seen, in case of concurrent jurisdiction, courts of equity apply the statute in analogy to courts of law. Wherever action at law could have been maintained for the same matter, equity will give effect to the statute. Wood on Lim. 108; *Goddell* v. *Kimmell*, 99 U. S. 201.

Therefore, the bar of the statute was a complete protection of the treasurer's estate against the claim, when it was paid, in any proceeding that could have been prosecuted, whether at law or in equity; and, as we have seen, the payment by a volunteer can not *revive* a debt already extinguished.

As to this minor debt of $297.41, therefore, I am of the opinion that the demurrer to the bill was properly sustained.

While it may be doubted whether the presumption of payment, or the mere staleness of demand, can be reached by demurrer to the bill, yet when the bar is applicable by analogy to the statute, and that appears in the bill, the defect may be taken advantage of by demurrer. Story's Eq. Pl. § 484, and notes; 1 Bart. Ch. Pr. p. 84; *Jackson* v. *Hull*, 21 W. Va., 601.

It has been argued, however, with great ingenuity and elaborate citation of authority, that the subsequent promise of the plaintiff, while administrator, and, as alleged, before the bar reached the debt, renewed the vitality of the claim, for an indefinite period longer. Chapter 104 of our Code contains the following provisions: Section 6 defines the limitations of actions on awards, and all contracts other than judgments; section 8 provides, "that no promise *except by writing* as aforesaid, shall take any case out of the operation of the said 6th section or deprive any party of the benefit thereof."

Section 9 is as follows:

"*No acknowledgment or promise, by any personal representative of a decedent, or by one or two more joint contractors shall charge the estate of such decedent, or charge any other of said contractors in any case, in which but for such acknowledgment or promise the decedents estate, or another contractor could have been protected under the sixth section of this chapter.*"

After carefully reading the argument of the able counsel representing the appellant, and examining the authorities referred to, and applying to this section in connection with those which precede it the well known rule that where there is no ambiguity in the words themselves none shall be interposed by construction, I am brought to the conclusion that a personal representative by his verbal promise can neither prolong against the decedent's estate the vitality of a debt not yet barred, nor revive such a debt, after the statute has reached and barred it.

In this case the conduct of the appellant, is sacredly regarding his verbal promise, and redeeming it, when he must have known there was great danger of personal loss, was highly commendable, and I regret that the only security upon which he could properly lean, and that was a corresponding degree of sensibility in the legatees or next of kin, has turned out to be a broken staff. The discretion of this Court in the premises is limited by the law, and the rules of equity, which follow the *law*. The statute of limitations is a statute of repose, and its application, in the main, salutary and beneficent.

When we come to apply the principles above deduced and

announced to the payment of the sum of $850.00 by the appellant, as administrator, it stands upon a different footing. This payment was made on the 18th of July, 1881, when the right of action on the deceased treasurer's bond had still *ten months* to run, before the bar of the statute could constitute a valid defence. Where a debt is not already barred, the administrator may pay it, if confessedly just and due, without waiting to be sued, and ordinarily when he has funds of his decedent, it is his duty to do so, and to credit himself with such payment in his settlement.

The important question in this case, however, is to determine whether there is anything stated in the bill which has occurred since such payment by him, which has defeated or impaired his right to be allowed this credit, and secondly, whether relief can be administered in this suit.

In the first place, it is claimed that, as the $850.00 was disallowed in the settlement, no suit could be brought to recover it; the only remedy, for the plaintiff, was to appeal from the action of the County Court, in affirming the settlement made by the commissioner denying him the credit, first to the Circuit Court, as he did, and thence to this Court.

It will be observed that the proceeding under chapter 87 of the Code, to settle the accounts of fiduciaries, is a strictly *ex parte* proceeding, inaugurated not by summons and personal service, but by publication and posting. The report of the commissioner of accounts may be excepted to by any one interested, it is true, and the County Court will then hear and determine such exception, and after doing so, will then confirm the report in such form as seems proper after "correcting any error which may appear in the exceptions, and any appearing on the face of the account whether excepted to or not." Code p. 677 § 31. Nevertheless this confirmation does not import the absolute verity of a judgment, but is only *prima facie* correct; for section 22 of said chapter (87) provides that, "The report, to the extent to which it may be so confirmed, shall be taken to be corrected, except so far as the same may, in a suit in proper time, be surcharged or falsified." Code p. 677, § 22.

In any such suit, the account may be surcharged and falsified by either party. *Seabright* v. *Seabright*, 28 W. Va.

412. And a bill in the Circuit Court under this chapter, since its amendment, in 1882, would seem to be the most efficient mode by which to correct the account as confirmed by the County Court, as those sections of the chapter as it stood in the Code of 1868, viz: sections 32 and 33, providing for "*appeals to the Circuit Court,*" have been stricken out, and others substituted. Compare Code 1868, p. 516, secs. 32 and 33 with W. Code, p. 679, secs. 32 and 33.

If, therefore, the Circuit Court has any appellate jurisdiction over such a confirmatory order of the County Court as is contemplated by sec. 21 of chapter 87, it is not derived from anything in that chapter, and must be derived from other statutory provisions or the general supervisory power of the Circuit Court over inferior tribunals. Should the appeal to the Circuit Court, therefore, in this case, be construed as having any validity whatever, its utmost effect is to confirm the judgment of the County Court, as *prima facie* correct, until surcharged or falsified by a suit in proper time, brought by any party interested, or by the personal representative himself, praying for a settlement of his accounts. This view is in strict accordance with the general principles of appellate jurisdiction; Powell on App. Proc. chap. 4, secs. 33 and 34, page 137–38: And also in accord with the past decisions of this Court : See *Seabright* v. *Seabright*, 28 W. Va. 412 ; *Campbell adm'r.* v. *White trustee, etc.,* 14 Id. 122 ; *Kyle* v. *Kyle etc.* 25 Id. 376; *Leach etc.,* v. *Buckner, adm'r.* 19 Id. 36.

It only remains, now, to consider whether the bill in this case is sufficient to warrant the granting of the relief to which the plaintiff therein is entitled?

The relief herein indicated as proper and equitable, is not embraced in the special prayer, but the bill contains a prayer for general relief, and inasmuch as every fact necessary to establish the relief to which the plaintiff is entitled is set out fully in the bill, there would be no difficulty in administering it under the prayer for general relief, by referring the cause to a commissioner, with such orders and instructions as should be equitable—( *Woods* v. *Fisher's adm'r.,* 3 W. Va. 536 ; *Barlow* v. *Hudson,* 13 Gratt. 672)—but for the fact that the *necessary parties* are not before the Court. The parties entitled to the personal estate of P. G. Van

Winkle, aud all who have a legal or equitable interest in the settlement of complainant's administration account, should be brought before the Court. The want of proper parties to a bill in equity appearing on its face is a defect reached by demurrer; and although the demurrant is, in general, required to state the parties who have been omitted, yet in a case like the present, where the bill on its face shows, not by name, but by class and general description what proper parties have been omitted, the Court, in order to promote and expedite the interests of justice, should give the plaintiff leave to amend his bill, and bring in all the necessary parties. *Pappenheimer* v. *Roberts*, 24 W. Va. 702.

It is true that the plaintiff, when the demurrer to his bill was sustained by the lower court, was given his option to amend his bill and declined to do so, and the bill was dismissed; and the general rule in such a case, when the appellate court is of opinion that the demurrer was properly sustained, is to affirm the decree dismissing the suit finally. But, as we have seen, the demurrer if intended to apply to the defect of a want of parties, should show who are the proper parties; 1. Dan. Ch'y Prac. 288*—89*. And if on this ground only, the demurrer is sustained, the decree should so state, and the plaintiff be given leave and opportunity to amend by inserting the proper parties, the general rule of equity being that a bill is never dismissed for want of parties alone. In this case, the demurrer was evidently erroneously sustained upon the *merits* and on the ground that the plaintiff had no equity. From this stand-point, he was right in declining to amend his bill, as he could add nothing to the merits of his claim by way of amendment.

This Court, however, having now decided that on the merits, equity is with him, but that on its face the bill is defective for want of parties, he should again have the opportunity and choice presented to him of amending his bill, and not be driven to bring a new suit.

In *McKay* v. *McKay*, 28 W. Va. 514, the Court thought the general rule should be adhered to, and the suit was dismissed. The decision in that case, so far as it conflicts with the above views, and our decision now unanimously concurred in in this case, must be overruled. *House* v. *Mullen* 22

Wall. 42. Story's Eq. Pl. § 541. *Hill et ux.* v. *Proctor,* 10 W. Va. 59.

Inasmuch as the decree of the Circuit Court was erroneous in not overruling the demurrer on the merits, and sustaing it for want of parties, and so stating on its face, it must be reversed and the cause remanded with leave to the plaintiff to amend his bill, if he so elects, the cause to be thence proceeded in as indicated in this opinion, and in accordance with the rules and principles of equity.

REVERSED. REMANDED.