Wilmerding *v.* Russ.

HARRIET B. WILMERDING AND OTHERS *vs.* MARY RUSS, EXECUTRIX, AND OTHERS.

*C* dying in April, 1842, bequeathed the residuary portion of her estate to *G*, to be held in trust for the benefit of certain minors, the interest upon the portion of each beneficiary to be added to the principal, so as to form an accumulating fund, which was to be paid to him on attaining his majority. In settling the estate it became necessary to convert some of the assets into money, and in furtherance of this object the administrator *R* transferred certain shares of insurance stock to *S*, making return, in his final account before the court of probate, of these shares as sold at their inventory value, and crediting the estate accordingly. *G* received the amount of the residuary portion of the estate in December, 1842, with knowledge of the facts above mentioned. In fact, though without the knowledge of *G*, *S* held this stock simply in trust for *R* the administrator, who had himself paid over its price to the estate, this price being its market as well as its inventory value. In 1856 *S* transferred the stock to *R*, who held it till his death in 1861. *S* died in the same year. Upon a bill brought in 1862, by the *cestuis que trust*, under the residuary bequest, who had attained their majority respectively in the years 1857, 1859 and 1860, against the executrix of *R*, praying for a reconveyance of this stock, and for an account; it was *held*, 1. That the

nominal sale to *S* for the benefit of *R* was constructively fraudulent, and could have been set aside if relief had been sought within a proper time. 2. But that the general statute of limitations was now a bar to any application for relief.

Statutes of limitation have no application to an open, continuing or acknowledged trust. An administrator remains in the position of a continuing trustee, until the final settlement of his administration account, but, after such settlement, the statute of limitations commences to run in his favor.

The minority of a claimant at the time when the claim accrued, will not bring him within the exception of the statute of limitations in equity, if at that time the legal right of action upon it was vested in a trustee for his benefit, who was under no legal disability.

Implied trusts are within the statute, which begins to run from the time the wrong was committed, by which the party becomes chargeable as trustee by implication.

The case of *Phalen* v. *Clark*, 19 Conn., 421, considered and approved.

Where an administrator sells to himself stocks belonging to the estate, crediting the estate with their full market value, and transferring them to some friend to hold for him, the transaction is not necessarily fraudulent in fact. Where the circumstances of such a sale do not prove actual fraud, it will be considered as only constructively fraudulent, and in cases of constructive fraud the statute of limitations applies.

BILL in equity, brought by Harriet B. Wilmerding, Johanna E. Russ, and John Russ Burrows, against Mary Russ, executrix of the estate of Charles J. Russ, deceased, praying for a re-conveyance of certain stocks, and an account. Other parties interested were also made respondents. The case was referred to a committee, whose report embraced the following facts :

Cornelia Russ died in 1842, leaving by her will the residuary portion of her estate in trust for the benefit of four minors who were to take in certain fixed proportions. The income accruing upon the share of each was to be added to the principal during his minority, and the whole paid over when he came of age, the share of any dying under age to be divided among the survivors. Administration, with the will annexed, was granted to Charles J. Russ. In June, 1842, he returned to the probate court an inventory of the estate, in which appeared 53 shares of the stock of the Hartford Fire Insurance Company, valued at $5 a share. This stock was nominally worth $50 a share, but only $16 a share had been paid in by the stockholders, the balance remaining secured by

stock-notes. A note of this character given by Cornelia Russ, upon which Charles J. Russ was surety, was in the possession of the company at the time of her decease.

In settling the estate it became necessary to dispose of some of its assets to pay debts and charges, and in furtherance of this object Charles J. Russ, the administrator, on or before November 12, 1842, made an arrangement to transfer this stock to Isaac W. Stuart, and on December 12, 1842, Stuart gave his note to the company with Russ as his surety, for the amount due on the note of the testatrix, and on December 22, 1842, Russ transferred the stock to Stuart on the books of the company. Russ settled his administration account December 20th, 1842, before the court of probate, and a decree was passed approving the same. In this account he charged himself as administrator with the sale of the stock at the price at which it was inventoried, which was then its fair market value, but at no time did he make return of the particulars of the sale. On the same day he paid over the residuary portion of the estate to the trustees under the will. They knew that the insurance stock had been disposed of, as above stated, and made no objections to the arrangement, but did not then suspect that there was any understanding that Stuart should ever re-convey the same to Russ.

The stock stood in the name of Stuart until December 1st, 1856, when he transferred it to Russ, and during all this time it was held for the use and benefit of Russ, and Stuart had no substantial interest therein. No fraudulent or collusive combination existed between Stuart and Russ in this matter, or any concerted concealment of their acts, except what is inferable from the facts stated.

The petitioners are the surviving *cestuis que trust,* and attained their majority respectively, in July, 1857, September, 1859 and March, 1860. On or about the last of these days the trustees first learned the true character of the transfer to Stuart, and had a conversation with Russ in relation to it, which would have been renewed had not his subsequent sickness and death prevented further communication. On June

21st, 1860, they informed the petitioners of the facts in the case, and left the matter in their hands.

Since the original transfer to Stuart the insurance company has made large dividends in cash and stock, all of which have gone to the benefit of Russ and his estate, and the stock and its accretions, now amounting to 88 shares of the par value of $100 each, still stands in his name upon their books. Two dividends were declared during the year 1842 upon the stock, and both were receipted for by Charles J. Russ administrator. One of these, payable June 3d, 1842, was credited by him to the estate in his administration account; the other, payable November 30th, 1842, was not accounted for by him in his account, nor can it be any further traced.

Against the acceptance of this report a remonstrance was filed on account of the rulings of the committee upon the admissibility of certain evidence; and all questions arising thereon, as well as those as to what decree should be passed if the report should be accepted, were reserved for the advice of this court. A statement of the points made by the remonstrance, or of the arguments of counsel upon them, is unnecessary in view of the opinion of the court.

*F. Fellowes* and *Chamberlin*, for the petitioners.

*First.* An executor or administrator, selling the estate which he represents, can not be a purchaser of it, nor will the policy of the law permit an inquiry into the fairness or unfairness of the transaction. *Mills* v. *Goodsell*, 5 Conn., 479; *Church* v. *Sterling*, 16 id., 388; *Davoue* v. *Fanning*, 2 Johns. Ch., 252; *Michoud* v. *Girod*, 4 How., 557. And equity will treat such a sale as a fraud. 1 Story Eq. Jur., secs. 190, 258, 321, 322; 2 id., sec. 1258, *et seq.*; *Oliver* v. *Piatt*, 3 How., 333. And the petitioners have no adequate remedy in a court of law. *Cowles* v. *Whitman*, 10 Conn., 121.

*Second.* The statute of limitations is not a bar.

1. Because this is a case of an express trust, and the petitioners never had any notice from Charles J. Russ that he claimed the stock by a title adverse to theirs. 1 Phill. Ev. (Edw's ed. of C. & H. notes,) 314, 333, and notes, 529, 530;

*Oliver* v. *Piatt*, supra; *Dilleybaugh's Estate*, 4 Watts, 177; *Kane* v. *Bloodgood*, 7 Johns. Ch., 90; *Baker* v. *Whiting*, 3 Sumner, 476; Ang. on Limitations, 161, *et seq.*

2. The petitioners were minors, and the suit was commenced within three years after their disability had ceased, except as to Harriet.

3. The statute did not run because of the fraud and the concealment necessarily inferable from the facts found by the committee, as the interposition of Stuart as a purchaser and as a holder of the stock for fourteen years for the benefit of Russ, the re-conveyance by Stuart to Russ when the stock was very valuable without consideration, and the concealment of the dividend of November, 1842, which was not credited in the administration account settled afterwards. Ang. on Limitations, 28, 188, 199, 509, 512; 1 Story Eq. Jur., § 186, *et seq.; Phalen* v. *Clark*, 19 Conn., 421; *Story* v. *Norwich & Worcester R. R. Co.*, 24 id., 94; *Lavette* v. *Sage*, 29 id., 577; *Nudd* v. *Hamblin*, 8 Allen, 130.

4. No presumption arises in favor of the respondents from the *lapse of time*, on account of this fraud and concealment, the relationship of trust between the parties, and the want of knowledge of the petitioners. Their action was brought within a reasonable time after attaining their majority. See *Callender* v. *Colegrove*, 17 Conn., 29.

5. Nor can *acquiescence* be imputed to the petitioners, for acquiescence presupposes knowledge of the facts. Here the trustees had no knowledge of the facts until about two years before the commencement of this suit, while the petitioners have been minors, and there is no evidence that they had any such knowledge before June, 1860. 1 Greenl. Ev., § 197. The burden of proving their knowledge is upon the respondents, since this is matter of defence which they set up.

*Third.* The legality of the sale has never been decided by the court of probate. The matter there adjudicated was, that the administration account presented was a proper one and should be allowed. The question presented here for adjudication is, whether the sale of the stock by the administrator to a third person for his own benefit—a matter which does

not appear in the account, which was not then even consummated, and of which neither the court nor the parties interested save the administrator had any knowledge—shall stand or be declared fraudulent and void. *Atkinson* v. *Atkinson*, 8 Allen, 15. Even had a return of sale been made and approved, the existence of a secret understanding between the administrator and the vendee, that the sale should be for the benefit of the former, would constitute an equitable estoppel against setting up the claim that the matter was *res judicata.* 2 Phill. Ev., (Edw's ed. of C. & H., notes,) 81, 84 ; *Pratt* v. *Northam*, 5 Mason, 95, 102

*O. S. Seymour* and *Hubbard*, with whom was *N. Shipman*, for the respondents.

*First.* The petitioners are concluded by the decree of the court of probate, in connection with the facts found by the committee, and the only remedy is by appeal. *Edmond* v. *Canfield*, 8 Conn., 89, 91. And at most, if the decree is not conclusive, and the stock could be considered as a part of the residuum of the estate not paid over to the legatees, it would then evidently be an unadministered asset, and so subject to the exclusive jurisdiction of the court of probate. *Davenport* v. *Richards*, 16 Conn., 310.

*Second.* The petitioners' remedy, if they ever had any, is barred by the statute of limitations.

1. The statute commenced to run in favor of Russ as administrator of the trusts of the will, from the settlement of his administration account, for this purported to be a full and final execution of this trust. Hill on Trustees, 264 ; *Kane* v. *Bloodgood*, 7 Johns. Ch., 90.

2. But if any trust existed after the settlement of this account, it is a different trust, growing out of the wrongful act of Russ in selling the stock to Stuart for his (Russ') benefit, by an artificial implication of law, and the statute runs against implied trusts from their origin. *Hawley* v. *Cramer*, 4 Cow., 717 ; Hill on Trustees, 504.

3. If the statute has barred the trustees under the will, it has also barred the petitioners. The trustees are barred, for they could have brought suit at any time, and the interest

which they have represented is therefore barred also. The *cestuis que trust* could not bring suit pending the trust except through the trustees, and their minority therefore is of no account, since even if not minors they could not bring suit. Between them and the administrator there was no fiduciary relation. The trustees, and they only, were the legatees under the will. *Gaunt* v. *Tucker's Executors*, 18 Ala., 27 ; *Wych* v. *East India Co.*, 3 P. Wms., 309.

4. The operation of the statute is not suspended by the alleged fraud of Russ. The fraud found consists, not of actual, but of constructive fraud. See *Miller* v. *Welles*, 23 Conn., 33. And no element of actual fraud appears in the facts of the case. But constructive fraud does not suspend the statute. *Nudd* v. *Hamblin*, 8 Allen, 130.

5. Nor is the statute suspended by fraudulent concealment of the cause of action. No such concealment is found by the committee, and the court can not find it when the committee have failed to do so. *Goodman* v. *Jones*, 26 Conn., 267 ; *Graves* v. *Lockwood*, 30 Conn., 279. And even could it be inferred as a conclusion of law from the facts found, as it can not, it would nevertheless be a concealment, not actually but constructively fraudulent. But if constructive fraud in the cause of action will not suspend the statute, *a fortiori* constructive fraud in concealing the cause of action will not. If the alleged fraud might have been discovered by the use of due diligence, this is equivalent to an actual discovery. *Farnham* v. *Brooks*, 9 Pick., 212. But a discovery might have been thus obtained by the trustees, and for all that appears by the petitioners. There is no allegation or finding that due diligence was exercised by either. See *Stearns* v. *Page*, 7 How., 829.

6. There was an adequate remedy at law, for any failure of duty on the part of the administrator in respect to this stock, by an action on his bond. This action, notwithstanding fraud and concealment, is barred by the statute. *Imperial Gas Light Co.* v. *London Gas Light Co.*, 26 Eng. Law & Eq., 425 ; *Bank of Hartford County* v. *Waterman*, 26 Conn., 324.

And if barred at law it would also be barred in equity. *Kane* v. *Bloodgood*, supra.

HINMAN, C. J. The bill seeks to make the executrix of the last will and testament of Charles J. Russ, deceased, accountable for fifty-three shares of the capital stock of the Hartford Fire Insurance Company, together with the dividends which have accrued thereon since 1842, under the following circumstances. The said Charles J. Russ in, May, 1842, was appointed administrator with the will annexed, on the estate of Cornelia Russ, who died in April, 1842, leaving a will, the residuary clause of which was as follows :—

" The rest and residue of my estate, real and personal, I direct should be held by trustees, hereinafter named, in trust as follows, to wit:—the same should be divided into seven parts, and held for the benefit of the children of my deceased sister and brother, to be divided and held for and delivered to them as follows:—each of the daughters to have two-sevenths parts, and the son of my sister, Mrs. Burrows, to have one-seventh part ; the interest or income of the part belonging to each shall accumulate and be added to the principal, and not paid over to the children respectively until they shall respectively attain the age of twenty-one, when each one so attaining said age shall respectively receive on his or her part both principal and interest. In case of the death of either of said children before attaining said age, then his or her said portion shall go to and be held for said survivor or survivors in like proportions, subject to the restrictions and limitations hereinbefore expressed. I appoint Rev. George Burgess and Henry Barnard, 2d, Esq., to be trustees of this will; and in case of the refusal, resignation or death of either of them, I direct the judge of probate of the district of Hartford to fill the vacancy, and in every case my trustees shall give bonds, satisfactory to said judge, for a faithful execution of said trust."

The petitioners are surviving legatees, and became of age as follows : Harriet, July 15, 1857 ; John Russ Burrows, September 13, 1859 ; Johanna Russ, March 9, 1860.

The testatrix at her decease owned fifty-three shares of the

capital stock of said insurance company, which were invento-
ried at five dollars per share. In the settlement of her estate
it became necessary to dispose of some of its assets, and the
administrator made an arrangement with Isaac W. Stuart to
transfer these shares to him, which was done on the 22d of
December, 1842, about six weeks after the arrangement was
made. On the 20th of December, 1842, Mr. Russ settled his
administration account with the court of probate, and in this
account he charged himself with these fifty-three shares of
stock as sold at the inventory price, which is found by the
committee to have been at that time their fair market value.
The account was approved by the court of probate, and the
rest and residue of the estate, as found by the court, was
delivered over to the trustees, and their receipt taken for the
same, on the said 20th of December, 1842. The stock con-
tinued to stand in the name of Stuart on the books of the
company until December, 1856, when it was transferred to
Mr. Russ. And it is found by the committee that Stuart held
the stock, not for his own use, but for the use and benefit of
Mr. Russ, and that Stuart had no substantial interest in it; but
the committee say that they do not find any fraudulent or
collusive combination between Stuart and Russ, nor any
concerted concealment of their acts, except what is inferable
from the facts specially found. The stock has now become
very valuable and has yielded large dividends, which, with a
transfer of the stock, were demanded of the executrix by the
petitioners before this suit was brought. Mr. Russ as admin-
istrator, on the 30th of November, 1842, received and gave his
receipt for a dividend of three dollars per share on the stock,
which he did not credit to the estate in his administration
account.

On these facts there can be no doubt that the sale of the
stock to Stuart was in trust for Mr. Russ ; and as Russ could
not legally be the purchaser of property which he owned as
administrator, and which he himself sold, the sale was con-
trary to the policy of the law, and was a void sale, however
fair and honest in fact it might have been, and would unques-
tionably have been set aside as constructively fraudulent, had

an application been properly made to the court in due season
for that purpose. The counsel for the respondents claim that
the petitioners had adequate remedy at law, by appeal from
the decree of probate settling the administration account,
and for this reason they have no remedy in chancery. That
they had this remedy before the statute of limitations in
respect to appeals from probate had run, is probably true.
And indeed this would seem to be an ample and an appropri-
ate remedy, but in cases of this description courts of equity
have in many cases claimed and exercised jurisdiction, and
we are not disposed in this case to examine the question
whether under our statute restricting the jurisdiction of
courts of equity to matters in which adequate relief can not
be had in the ordinary courts of law, this bill ought to be dis-
missed on this ground, since we are of opinion on another
ground that the petitioners are not now entitled to the relief
they ask for.

The case, we think, may safely be put upon the general
statute of limitations, irrespective of the statute prescribing
the time within which appeals from probate must be taken.
The petitioners claim that an administrator is a trustee, and
that, in chancery, statutes of limitation do not run in favor of
trustees; and it is unquestionably true that while the trust is
an open, continuing or acknowledged trust, statutes of limi-
tation have no application. Before the settlement of his
administration account, and while he is acting as administra-
tor, he is a continuing trustee, the trust is executory, and
statutes of limitation have no application to him, because in
general in no fair sense is there a cause of action against
him until he is called on to account, and until a cause of
action accrues the statute does not commence running.
But when he makes a final settlement of his administration
account with the court of probate, then a cause of action does
arise if there is any just ground of complaint against his
account. He then openly attempts to discharge himself of
his character of trustee, lays down the trust, and repudiates
the idea of being any longer administrator in respect to the
estate administered upon. If the statute does not then begin

to run it never does or can, and there is no limit to the liability of executors and administrators. Whatever cause of action these parties ever had, they had in 1842. This suit was commenced more than nineteen years after the close of the administration account and the approval of it by the court and the final disposition of the residuary estate according to the terms of the will. By this lapse of time all legal remedies are barred, and equitable remedies also, unless the case can be brought within some of the exceptions to the statute. The petitioners say the fact that they were minors brings them within an exception to the statute. But the residuary estate is by the will vested in trustees, who were under no legal disability, and this is a sufficient answer to this claim. *Wych* v. *East India Company*, 3 P. Wms., 309.

Again, it is claimed that Mr. Russ by the purchase of the stock through the agency of Stuart became a trustee for the petitioners, and that this is a continuing and still subsisting trust, and therefore not within the statute. But by the whole current of modern authorities implied trusts are within the statute, and the statute begins to run from the time the wrong was committed by which the party becomes chargeable as trustee by implication. This subject has been fully examined in *Kane* v. *Bloodgood*, 7 Johns. Ch., 90, and by Judge Story in *Robinson* v. *Hook*, 4 Mason, 152, and a reference to these cases is sufficient.

But a more difficult question arises upon the report of the committee, on the further claim of the petitioners, that an actual, as distinguished from a constructive or legal fraud, was committed upon them by Mr. Russ; and that this fraud was concealed from them until after the statute of limitations had attached to the claim; and that, in a court of equity, the statute of limitations ought not to be allowed to protect a fraud of this sort. And the case of *Phalen* v. *Clark*, 19 Conn., 421, is relied upon in support of this claim. We have no disposition to dispute this doctrine as established by the authority of that case, although the principle ought not, we think, to be extended. Where fraud is concealed for the purpose of taking advantage of the statute of limitations there

is a strong natural justice in punishing it, however remote, especially when no laches are imputable to its victims. Still, we must recollect the danger of mistake in the examination of stale demands, and the great difficulty there is in getting at the whole truth in respect to ancient transactions; the danger and difficulty in which are greatly increased in cases like this, where both the actors in the subject of investigation are dead. It can hardly be otherwise than that many of the items of evidence which may happen to be preserved, and which appear after so long a time in an unfavorable light, would be subjects of satisfactory explanation if the parties to the transactions were alive to explain them. It is true that considerations of this sort would be entirely out of place here, if the committee had seen fit to find that there was in this case the fraud and the concealment which would bring the case within the principle established by *Phalen* v. *Clark*. But we think they have not done this. They have found certain facts. They have negatived all combination to defraud, and all combined concealment, and then left it for us to infer from the facts they have found whether there was actual fraud in the case or not. It is the case, therefore, where we are called upon to draw inferences which the committee were not willing to draw. And in such a case we must most obviously act upon the same principles that it would have been the duty of the committee to act upon, or we must omit to draw any inferences whatever.

The committee, we have remarked, do not find actual fraud. If it existed the court must infer it from the facts reported by the committee. Now the interposition of Stuart as a sham purchaser is relied upon by the petitioners as an important item of evidence to show the fraud. Undoubtedly it is evidence favorable to the petitioners on the point, but we think it is not of that conclusive nature that requires us to find the fraud upon it alone, or in connection with any other facts in the case. As administrator Mr. Russ could not transfer the stock directly to himself. The transfer to a friend, therefore, was natural as well as necessary, if the administrator intended to become the purchaser. Such purchases, though forbidden

by the policy of the law, are, we believe, often made by executors and administrators from honest motives and to save the property from ruinous sacrifice, and are not, we think, necessarily, as matter of law, fraudulent in fact. If the sale had been at any thing less than its actual value at the time, it would have been much stronger evidence of fraud. But when the administrator could have procured the same or a larger quantity of this stock in the market at the same price at which he accounted to the estate for this, he obviously had no motive to commit a fraud, and in the absence of any motive the inference is nearly as strong that he did it for the benefit of the estate as that it was done for his own benefit.

The transaction was not at once openly recognized as a sale to the administrator, but the stock remained in the name of Stuart until 1856. This undoubtedly is a suspicious circumstance. Still it may have arisen from the confidence which the parties reposed in each other, and from the mere neglect and inattention consequent upon the small value which the stock had at that time; and there may have been objects to be accomplished entirely unconnected with the matter in dispute. In the absence of all proof, and after the death of the parties has rendered any explanation impossible, we do not feel justified in saying that the failure to re-transfer was intended to conceal the facts from the notice of the petitioners or their trustees; especially after the express statement of the committee that they do not find any fraudulent or collusive combination between Stuart and Russ, or any concerted concealment of their acts, except what is inferable from the facts themselves, and that the administrator charged himself with the fair market value of the stock, and that the sale of assets to the amount of the value of this stock was necessary to pay debts and charges against the estate, and the sale of the stock in furtherance of that object. As the committee, with all the facts before them, and of course a much better opportunity to come to a correct result upon the subject than it is possible for us to have, have not seen fit to find actual fraud, we do not feel justified in coming to a result to which they could

not arrive. A court of equity would undoubtedly declare the sale to be one which was invalid, as against the policy of the law and constructively fraudulent, but in cases of constructive fraud the statute of limitation applies. The decisions to this effect are conclusive. *Bickford* v. *Wade*, 19 Ves., 88 ; *Murray* v. *Coster*, 20 Johns., 576 ; *Robinson* v. *Hook*, 4 Mason, 151.

It is not, moreover, unworthy of notice on the question of fraudulent concealment, that the sale to Stuart at its fair value was known to the trustees, and they made no objection to it whatever ; and to allow them or the petitioners, after this lapse of time, to set the sale aside as fraudulent, is to allow them, at any subsequent time however remote, to take advantage of any fluctuation by which its value was increased, while they in any event obtain its full value at the time, in the settlement of the administration account.

In respect to the dividend on this stock which Mr. Russ received, November 30th, 1842, it was received after the arrangement for the transfer of the stock was made, but before its final transfer on the books of the company. It was openly receipted for on the books of the insurance company a few days before the settlement of the administration account. The claim in regard to it stands substantially on the same footing with the claim for the stock itself and the subsequent dividends. We think the petitioners' remedy is barred by the lapse of time, and so we advise the superior court. The opinion here expressed renders it unnecessary to consider the question of evidence which the respondents raised.

In this opinion the other judges concurred, except DUTTON, J., who dissented.