# CHARLESTON.

## BEECHER v. FOSTER, et al.

Submitted June 17, 1901.   Decided April 5, 1902.

51   605
62   606

51   605
s66   453

1. TRUSTS—*Implied—Within Statute of Limitations.*

   Implied trusts are within the statute of limitations and the statute begins to run from the time the wrong was committed by which the person becomes chargeable as trustee by implication. (p. 617).

2. BENEFICIARIES—*Necessary Parties.*

   H. & B. and M. filed a petition, answer and cross bill in a cause setting up a note of one F. held by them by assignment of .H. the payee as collateral to secure their respective claims and also to secure the claims of other creditors of said H. mentioned in the said petition, answer and cross bill, but claiming priority and preference to plaintiffs in said cross bill, over the other beneficiaries in said assignment mentioned. *Held:* Such other beneficiaries were necessary parties to the petition and cross bill. (p. 619).

3. ADVERSE PARTIES—*Hostile Interests.*

   A party cannot stand as a representative of others to whom his own interests are hostile and adverse. (p. 611).

4. TRUSTEES—*Accounts of—Compensation.*

   Under the last clause of section 6, chapter 72, Code, where a debtor conveys all his property to a trustee for the benefit of his creditors or where he so conveys it all except what is exempt from execution or other process, and where it is made the duty of the trustee to take possession, control, manage and administer the trust property, the commissioner of accounts in stating and settling the accounts of such trustee should make the same allowances to him for reasonable expenses and reasonable compensation in the form of a commission as should be allowed to an executor or other fiduciary under section 17, chapter 87, Code. (p. 620).

Appeal from Circuit Court, Ritchie County.

Action by John S. Beecher against Thomas Foster. Decree for plaintiff and defendant appeals.

*Affirmed in part.   Reversed in part.   Remanded.*

V. B. ARCHER and WILLIAM BEARD, for appellant.

MERRICK & SMITH and W. N. MILLER, for appellees.

McWHORTER, JUDGE:

On the 24th day of July, 1883, John Hustead conveyed to Thomas Foster a tract of two hundred and fifty-eight acres of land in Highland County, Ohio, in consideration of twelve thousand five hundred dollars. Said Foster paid a part of the purchase money and gave his three several notes for two thousand dollars each and one for seven hundred dollars, one of which notes for two thousand dollars payable in two years from its date with interest was on the 15th day of April, 1884, by said Hustead assigned and transferred by endorsement in writing on the back of said note, one thousand dollars a part thereof to Mrs. Mollie E. Foster daughter of said Hustead and on the same day he assigned in like manner one thousand dollars of the same note to his daughter Mrs. E. A. Leap; Mrs. Leap afterwards in September of the same year assigned her one thousand dollars of said note to H. H. Leavensworth, attorney in fact for the Livingstone, Ontario and Greaves Run Mining and Petroleum Company, in part payment for a tract of two hundred and seven acres of land purchased by her from said company which one thousand dollars of said note so assigned to Mrs. Leap and by her assigned to Leavensworth came to the hands of J. S. Beecher, president of the said mining and petroleum company, and a creditor thereof to the extent and value of said note. On the 9th day of August, 1886, Thomas Foster made a general trust assignment to John P. Saunders, trustee, for the benefit of all his creditors including in said assignment said tract of two hundred and fifty-eight acres of land in Ohio subject to a mortgage in favor of L. B. Dellicker for five thousand five hundred dollars and a large number of tracts of land and interests in land in the State of West Virginia, and all his personal property as well on the said Ohio farm as that in West Virginia reserving only from the effect and operation of said deed of assignment two hundred dollars worth of personal property, household and kitchen furniture, the amount of exemption allowed by law. On the 19th day of November, 1885, Thomas Foster executed a mortgage on said two hundred and fifty-eight acres of land so purchased from Hustead to secure L. B. Dellicker in the sum of five thousand five hundred dollars borrowed from said Dellicker; on the 29th of September, 1886, the trustee Saunders borrowed from Dellicker two thousand dollars and from the First National Bank of Parkersburg five hundred and fifty dollars for

the purpose of compromising and paying off prior judgment and attachment liens against the said two hundred and fifty-eight acres in Ohio and the personal property thereon amounting to four thousand dollars, which liens were paid off and satisfied by the said Saunders, trustee, with the said sum of two thousand five hundred dollars; on the 25th day of June, 1887, said trustee refunded and repaid to said Dellicker the two thousand dollars with eighty-eight dollars and eighty-four cents interest. At the July rules, 1890, J. S. Beecher, plaintiff, filed in the circuit court of Wirt County his bill against Thomas Foster, J. P. Saunders, trustee, E. R. Woodyard, sheriff of Wirt County, and as such administrator of John Hustead deceased, Eliza A. Leap, Mollie E. Foster, the Livingstone, Ontario Greaves Run Mining and Petroleum Company and others to enforce the collection as he claimed of a balance due him on said assignment of the one thousand dollars of the said note, of eight hundred and ninety-five dollars, which suit involved a settlement of the accounts of the said Saunders as such trustee, plaintiff praying that said trustee be required to answer the bill and state fully the amount and value of all money and property received by him under the deed of trust made to him by Foster, etc. On the 5th day of April, 1893, John L. Hall and Samuel H. Beiler, partners as Hall & Beiler, and William S. Mackey tendered their joint petition, answer and cross bill in said cause of John S. Beecher against John P. Saunders trustee and others reciting the object of the suit of John S. Beecher and alleging that John Hustead was engaged as a co-partner at Climax Springs in the State of Missouri with one ———— Douglass under the firm name of Hustead & Douglass in general mercantile business, that said firm was on the first day of September, 1886, indebted to Hall & Beiler, engaged at Sedalia, Missouri in the business of wholesale grocers, in a balance on account of two hundred and twenty-nine dollars and fifty-nine cents with interest from September 1, 1886, and to the said Mackey who was in the wholesale boot and shoe business at Sedalia in the sum of two-hundred and four dollars and five cents, balance of account with interest from July 25, 1887, which balances had not been paid; that at the same time said Hustead & Douglass were also indebted in various amounts stated, to William Curran, to E. E. Johnson, to D. A. Clark, to McGlaughlin Bros., all of Sedalia, Missouri; to A. R. Lemon and to Clark and Drake of Warsaw,

Missouri; and to J. E. Allison, to John Kobrock and to the St. Louis Hardware Company; that the said John Hustead prior to the maturity thereof and for the purpose of obtaining indulgence and extension of credit from respondents and others and as collateral security for said debts assigned, transferred and set over to respondents Hall & Boiler and W. S. Mackey a certain note of the defendant Thomas Foster dated Hillsboro, Ohio, July 24, 1883, whereby four years after date said Thomas Foster promised to pay to the order of said Hustead two thousand dollars with interest until paid and exhibited with their answer and cross bill said note; that the understanding and agreement was that said note was to be taken and held by respondents as collateral security, first for the payment of the respective debts of respondents and after them as collateral security for the payment of the several debts of the creditors before mentioned; that said Hustead & Douglass failed in business both becoming insolvent and no part of the debts due respondents and other creditors was ever paid and they were obliged to resort to said collateral security of the said note of said Foster, and by way of matter of complaint in their cross bill they alleged the assignment by said Foster of his real and personal estate to Saunders, the trustee, and the giving of the mortgage by Foster to Dellicker for the five thousand five hundred dollars and that prior to said mortgage to Dellicker certain judgments had been rendered against John Hustead and Foster in Highland County and become liens on the land of said Foster and that the mortgage of said Dellicker was subject to the liens of said judgments; that the said Dellicker was not named as a creditor in the deed of assignment of said Foster and was not entitled to share therein or derive any benefit therefrom unless it might be under the provision of said assignment respecting the claims and demands inadvertently omitted from the list of non-preferred creditors; that said Dellicker had due notice of the terms and provisions of the said assignment from the time of its execution; that on the 29th of September, 1886, the trustee, Saunders, undertook to borrow from Dellicker two thousand dollars and from the First National Bank of Parkersburg five hundred and forty-two dollars and fifteen cents for the purpose of paying off and discharging the several judgments against said Hustead and Foster which constituted liens on the land in Highland County prior to the mortgage of said Dellicker aggregating two thousand

five hundred dollars and which money so borrowed was paid by
the said Saunders on the 30th of September, 1886, to the credi-
tors in satisfaction of the said judgments; that on the 25th day
of June, 1887, the said Saunders, trustee out of the proceeds of
the sale of the property in West Virginia to which plaintiffs in
the cross bill and other creditors secured by said trust were en-
titled, undertook to pay the said Dellicker the two thousand dol-
lars borrowed and the accrued interest thereon amounting to
eighty-eight dollars and eighty-four cents and Dellicker received
the same with full notice of the rights and equities of plaintiffs
and other creditors, which appears from the said trustee's second
report to the clerk of the county court of Wirt County where he
credits himself in his accounts with the payment of said money
to Dellicker on June 25, 1887; and on the 28th day of October,
1886, said Saunders, out of the funds arising from the West
Virginia property, paid the First National Bank of Parkers-
burg five hundred and forty-seven dollars which appears from a
copy of the said second report exhibited in the cross bill; that
plaintiffs were advised and believe that said Dellicker and the
said bank in loaning the money to Saunders, trustee, and in re-
ceiving payment from him had notice of his trusteeship and
that he was without authority to borrow money and that he had
no authority to divert the funds in his hands to the payment of
the money borrowed and expended as stated, that the dealings
of the said bank and Dellicker were in law and in equity in-
dividual contracts with the said Saunders and that he had no
lawful authority to pay his individual contracts and obligations
out of the funds belonging to the trust creditors of said Foster
and that Dellicker and the bank who so received said money
from the trustee should be held and treated as trustee thereof
for the benefit of the creditors including plaintiffs and should be
required to refund and repay the same and alleged that the bor-
rowing of said money and the payment of the judgments by the
trustee was a scheme and device of said Saunders, Dellicker and
Foster to relieve the land in Highland County from said judg-
ments in the interest of the mortgage of Dellicker and in fraud
of the rights of the other creditors of Foster, that after the land
was so relieved said trustee, about the 10th of November, 1887,
sold forty-seven acres of said land to Dellicker at the price of
eleven hundred and seventy-five dollars which was credited on
the mortgage debt of Dellicker, and on or about the 11th of

April, 1889, the trustee sold the residue of the Highland County land to one W. A. Polk at the price of five thousand dollars, just the balance alleged to be due said Dellicker on said mortgage, and the trustee claims to have paid the whole amount of the proceeds of said last mentioned sale over to Dellicker in satisfaction of his mortgage which is shown by the report of the trustee to the clerk of the county court of Wirt County, and charges against the other funds belonging to said estate his commission of five per centum amounting to three hundred and eight dollars, and seventy-five cents, which commissions plaintiffs allege was a proper charge against the proceeds of the sale of the Highland County land and that having been paid over to Dellicker he should be required to refund the same. And further allege that said trustee in addition to said unlawful expenditure of the trust funds in the interest of the mortgage of Dellicker, acknowledged in his statement to Casto, special receiver, the expenditure of the sum of fifteen hundred and thirty-seven dollars and ninety cents by way of costs incurred in clearing off the judgments against the said Highland County land which should have been deducted from the proceeds of the sale of said land and not charged against the other trust funds, and the proceeds having been wholly paid over to Dellicker he should be required to refund the same for the use of the trust creditors of Foster; and that further to relieve the said land in the interest of said Dellicker the trustee, Saunders, on January 20, 1887, paid out of said trust funds three hundred and five dollars and fifty-six cents, taxes on said land which should be required to be refunded by Dellicker for the benefit of said creditors; that said Saunders, trustee, also illegally paid to the Citizens National Bank two hundred dollars, to the Second National Bank of Parkersburg sixty dollars not mentioned nor preferred in said assignment and only entitled to a *pro rata* share of the fund applicable to non-preferred creditors; that said trustee by sale and conveyance to Mollie E. Foster, October 23, 1888, of house and lot in Elizabeth at the price of eight hundred and fifty dollars paid her in full the preferred debt due her on account of said assignment, and on May 16, 1887, he paid her in cash twenty-five dollars, on July 3, 1887, fifteen dollars, on December 20, 1887, fifty dollars which fully paid her preferred notes, and that it appears by the trustee's report made August 13, 1889, that he paid her nine hundred and forty-five dollars

which is claimed to be an excess of any preferred claims due her and which should be made a lien as to the excess over her *pro rata* share as one of the non-preferred creditors on the house and lot in Elizabeth conveyed to her by trustee.

Plaintiffs in the cross bill pray that the plaintiff and several creditors named as defendants in the caption of the amended bill of complaint be made defendants to the cross bill and in addition thereto the said Dellicker, M. W. Brain, D. C. Casto special receiver, V. B. Archer in his own right and as special commissioner, D. H. Leonard, the Citizens National Bank of Parkersburg, the First National Bank of Parkersburg and the Parkersburg National Bank of Parkersburg, be made parties to the cross bill and required to answer the allegations thereof; that plaintiffs in the cross bill be admitted as defendants in the original and amended bills and that their petition, answer and cross bill be taken and treated as their answer to said original and amended bills, and, in addition to the prayer for relief in the original and amended bills, pray that they may have a decree against said Foster for the note of two thousand dollars held as collateral security to themselves and other creditors of Hustead and Douglass, that a decree be entered for the sale of the unsold real estate of said Foster and a decree be entered in favor of D. C. Casto, special receiver, against said Dellicker for the sum of two thousand and eighty-eight dollars and eighty-four cents with interest from June 25, 1887, and for the commissions of Saunders, trustee, for the sale of the Highland County land amounting to three hundred and eight dollars and seventy-five cents wrongfully paid over to him by the said Saunders, trustee, as herein set forth with interest from the day of payment, and for the sum of three hundred and five dollars and fifty-six cents taxes on the Ohio land aforesaid with interest from January 20, 1887, and for the sum of fifteen hundred and thirty-seven dollars and ninety cents reported by said Saunders, trustee, to have been paid out of the trust funds in his hands to pay costs and expenses of suit in Highland County, Ohio, with interest thereon from date of payment, and for a decree against Mollie E. Foster in favor of Casto, special receiver, for nine hundred and forty dollars wrongfully paid to her by Saunders, trustee, also for a decree against Citizens National Bank for two hundred dollars, and against the Parkersburg National Bank for sixty dollars, wrongfully paid to said banks by the said

trustee on notes of Foster not preferred in said deed of trust, and also for a decree in favor of said receiver against the First National Bank of Parkersburg for five hundred and forty-seven dollars borrowed by the trustee from said bank, and for the sale of the land of Thomas Foster, that the assets of the estate be marshalled, debts, liens and priorities ascertained, and the accounts of Saunders, trustee, and of D. C. Casto, special receiver, be settled and the affairs of the estate of Foster finally wound up and the proceeds distributed to those legally entitled thereto, and for general relief.

Defendant, L. B. Dellicker, demurred to said cross bill and answered the same denying that he knew anything of the prior liens on the Ohio property at the time he loaned Foster the fifty-five hundred dollars and took a mortgage thereon. Avers that the trustee Saunders informed respondent that legal proceedings were had in the common pleas court of Highland County, Ohio, against the land and personal property belonging to the trust estate and asked him to loan him money to protect it for the trust creditors, and on the 29th of August, 1886, he loaned the trustee for that purpose two thousand dollars which the trustee used for the protection of said trust property in saving it from litigation; denies any fraud, collusion or any scheme or device by said respondent or Saunders, trustee, and each and every allegation in said cross bill which in any way tends to reflect upon respondent as guilty of any fraudulent practice, collusion or combination in any particular in said transaction; admits the money was repaid to him, June 25, 1887, with interest, eighty-eight dollars and eighty-four cents. Respondent says that he relies upon the statute of limitations against the claims of the plaintiffs in the cross bill, that as appears by the record in the cause said cross bill, was filed April 5, 1893, against respondent and others; that this is the first time respondent is brought into court in said cause; that the claims of the plaintiffs in said cross bill are mere parol contract debts against Thomas Foster and that the statute of limitations at five years bars the claims of the plaintiffs in said suit because the sum of two thousand dollars and interest thereon which respondent had loaned to said Saunders as trustee was repaid to him by the trustee on the 25th day of June, 1887, and that five years from that time would be the 25th day of June, 1892, and, hence, the plaintiffs are barred, not having instituted their suit against respondent, if

they had any just cause of action, until after the lapse of five years and respondent therefore pleads and relies upon the statute of limitations not only as to the claims of the plaintiffs in said cross bill but also as to the claims of each and every other creditor of the said Thomas Foster in said cause growing out of any transaction in said cross bill, mentioned or otherwise; to which answer the plaintiffs in the cross bill made general replication. The cause was referred to commissioner, O. C. Morris of Wirt County, who made three reports. The cause was removed to Ritchie County and there recommitted to commissioner Lininger, who filed a report to which said Hall and Beiler and Mackey filed three exceptions. First, because the commissioner reported as a lien upon the Highland County, Ohio, property the deed of trust or mortgage of Dellicker for fifty-five hundred dollars, the said property in the deed of trust from Foster to Saunders of August 9, 1886, conveyed said land subject to the Dellicker mortgage and the equity of redemption only should have been sold and the mortgage was not a lien upon any of the property conveyed to the trustee, and second, because the commissioner had allowed the trustee credit for total disbursements of twenty-two thousand seven hundred and sixty-four dollars and seven cents under his fourth head which included two thousand and eighty-eight dollars and eighty-four cents paid Dellicker out of general funds, and five hundred and forty-seven dollars paid First National Bank for money borrowed, without authority, to pay off liens on the Ohio land prior to Dellicker's mortgage, and because it included three hundred and five dollars and fifty-six cents for taxes on the Ohio land out of the general funds; and six thousand one hundred and seventy-five dollars paid Dellicker on mortgage; and further because the said sum included several items of general expenses properly chargeable to and payable out of the sale of the Ohio land before payment to Dellicker on account of his mortgage naming various items of expenses of trustee and others to Ohio and to Missouri and costs in Ohio and commissions on aggregate sales of land in Ohio, two per centum on six thousand one hundred and seventy-five dollars; third, because the commissioner reported a balance in the hands of trustee Saunders of only thirteen hundred and ninety-eight dollars and ninety-three cents when the balance would be much greater if improper credits were disallowed and a true balance struck. Trustee Saun-

ders excepted to said report because the commissioner disallowed the sum of seven hundred and thirty-two dollars and ninety-four cents, commissions charged by him in his settlement as trustee; the commissioner allowed four hundred and fifty-five dollars and eighteen cents only whereas he should have allowed eleven hundred and eighty-eight dollars and twelve cents, as shown by exhibit No. 3 with Saunders' deposition; second, because in stating the debts against the estate of Foster the commissioner wholly failed to report the debt due from Foster to said Saunders amounting to eighteen hundred and ninety-five dollars and forty-three cents with interest from August 9, 1883; third, because the commissioner finds a balance of thirteen hundred and ninety-eight dollars and ninety-three cents due from Saunders when the true amount was six hundred and seventy-one dollars and forty-nine cents as shown by Saunders' settlement.

The cause was heard on the 3d day of November, 1899, when the court sustained the second exception of trustee Saunders to the commissioner's report and overruled his first and third exceptions; and sustained the second exception of the plaintiffs in the cross bill as to the item of twenty hundred and eighty-eight dollars and eighty-four cents paid to Dellicker, and three hundred and five dollars and fifty-six cents taxes paid on the Ohio land, and various items of costs and expenses aggregating two hundred and forty-seven dollars and fifty cents, and five hundred and forty-seven dollars paid the First National Bank, in all aggregating the sum of three thousand one hundred and eighty-eight dollars and ninety-nine cents, which aggregate amount it was decreed should have been deducted from the gross proceeds of sale of the Ohio property, Dellicker having been paid in all six thousand one hundred and seventy-five dollars being in excess of the amount to which he was entitled in the sum of eighteen hundred and seventy-three dollars and one cent, as ascertained by the court with which the court charged him interest from the 11th day of April, 1889, to date of decree, which aggregated at that time the sum of three thousand and fifty-six dollars and ten cents, for which decree was rendered against Dellicker; the third exception of said plaintiffs in the cross bill to said commissioner's report was over-ruled. From this decree the defendant Dellicker appealed and assigned as error, the overruling of the demurrer of appellant to the cross

bill of Hall, Beiler and Mackey, and that the court further erred in the decree of November 3rd in entering any decree for any sum of money whatever against the appellant and particularly in entering a decree for the sum of three thousand and fifty-six dollars and ten cents; and in sustaining the exceptions of the said Hall, Beiler and Mackey to the report of the commissioner; and in not sustaining appellant's plea of the statute of limitations against the claims of Hall and Beiler and Mackey.

As to the first assignment, the overruling of the demurrer, the cross bill shows on its face that the money decreed against appellant Dellicker was paid him by the trustee Saunders on the 25th day of June, 1887, and the record shows that the cross bill was filed on the 5th day of April, 1893, within a little over two months of being six years from the date of payment to the time of commencing proceedings to recover it. Appellees contend that the bill being filed for the purpose of surcharging and falsifying the accounts of the trustee and for accounting by him, there is no statute of limitation fixed for a bill of this character. This may be true as far as the trustee is concerned, but is it so in case of an implied or constructive trust? What is the relation of Dellicker to this trust fund?. There is certainly not an express trust, he received the money in payment of the indebtedness of the trustee to him, for money borrowed for the purposes of the trust estate and the receipt of it by Dellicker created an implied trust, there were none of the elements of a contract for the purpose of creating a trust in the transaction, there was no intention to create a trust, but as far as the parties were concerned it was the simple payment of a debt due from the trustee to Dellicker. The great weight of authorities is that such a trust is subject to the statute of limitations. Appellees cite *Duckett* v. *Bank,* 86 Md. 400 (63 Am. St. 513), where it is held: "One who participates in a breach of a trust can no more than the trustee invoke the defence of the statute of limitations." The opinion in that case shows that the plea of the statute of limitations by the bank was relied on "only as against the claim for two thousand dollars, which is not the claim for the two thousand and twenty-four dollars and thirty cents collected on the check given in payment of the Duckett mortgage debt—and that is the claim for which we hold the bank liable. So in fact the statute is pleaded against the

claim that the bank is not liable for, and is not pleaded against the claim for which it is responsible." Section 1080, 2 Pom. Eq. Jur. is cited as well in support of said decision as by appellees in case at bar, where it is said: "The trustee's personal liability to make compensation for the loss occasioned by a breach of trust is a simple contract, equitable debt. It may be enforced by a suit in equity against the trustee himself, or against his estate after his death, and the statute of limitations will not be admitted as a defense unless the statutory language is express and mandatory upon the court." In treating of trusts, 1 Bart. Chy. Pr. 117, s. 27, it is said: "Those which come under the general head of indirect trusts, and which are subject to the laws of limitation, are resulting, implied and constructive trusts." 2 Minor's Institutes (4 Ed.) 218, "Constructive trusts, depend on *conclusions* of *law,* independently of contract or intent, are commonly imposed in *invitum,* and embrace every trust arising by operation of law which is neither implied nor resulting." 1 Lom. Dig. 232-3; 1 Spence's Eq. Jur. 508 and ·Seq.; 2 Story's Eq. s. 1195 and Seq.; *Cook* v. *Fountain,* 3 Swants 585. 1 Rob. Pr. (New) 458: "To exempt a trust from the bar of the statute, it must be, first, a direct trust; secondly, it must be of the kind belonging exclusively to the jurisdiction of a court of equity; and thirdly the question must arise between trustee and *cestui qui trust.*" 2 Wood on Lim. s. 200: "Trusts which arise from an implication of law, or constructive trusts are not within the rule, but are subject to the operation of the statute, unless there has been a fraudulent concealment of the cause of action, and the statute is as complete a bar in equity as at law." In *Wilmerding* v. *Russ,* 33 Conn. 77, it is said by C. J. Hinman: "By the whole current of modern authorities, implied trusts are within the statute, and the statute begins to run from the time the wrong was committed, by which the person becomes chargeable as trustee by implication." *Kane* v. *Bloodgood,* 7 Johns. Chy. R. 90; *Robinson* v. *Hook,* 4 Mason (U. S.) 139 (152); *Swindersine* v. *Miscally,* 1 Bailey (S. C.) Chy. 304; *Haynie* v. *Hall,* 5 Humph. (Tenn.) 290. In *Sheppards* v. *Turpin,* 3 Grat. 373, Syl. 3, 4 and 5 are as follows: "3. Property conveyed in a deed of trust is taken under execution and sold, and the purchasers remain in peaceable possession thereof for five years before suit is instituted by the trustee or the *cestui qui trust* to recover it.

*Held:* The statute of limitations is a bar to the recovery. 4. A mere constructive trustee may protect his possession by a plea of the statute of limitations. 5. If the statute of limitations will bar the action of the trustee against third parties for the recovery of the trust property, it will equally bar the action of the *cestui qui trust* for the same subject matter." And in *Speidel* v. *Henrici,* 120 U. S. 377, it is held: "Implied trusts are barred by lapse of time. A court of equity will not assist one who has slept upon his rights, and shows no excuse for his *laches* in asserting them. If a bill in equity shows upon its face that the plaintiff, by reason of lapse of time and of his *laches,* is not entitled to relief, the objection may be taken by demurrer." *Maxwell* v. *Kennedy,* 8 Howard 210; *Bank* v. *Carpenter,* 101 U. S. 567; *Lansdale* v. *Smith,* 106 U. S. 391. And in *Thompson* v. *Whitteker,* 41 W. Va. 574 it is held: "The defenses of the statute of limitations and *laches* and stale demand may be made by demurrer." *Jackson* v. *Hall,* 21 W. Va. 601; *Laidley* v. *Laidley,* 25 W. Va. 530; *Crumlish* v. *Railroad Co.,* 28 W. Va. 637; *VanWinkle* v. *Blackford,* 33 W. Va. 582, (11 S. E. 26) ; *Whitteker* v. *Improvement Co.,* 34 W. Va. 217, (12 S. E. 507) ; 1 Dan. Chy. Pr. 559, s. 9. In *Thompson* v. *Whitteker,* cited, it is said: "Where the trust is such as admits of a law jurisdiction, the statute applies, and were it a trust of purely equitable cognizance known only to equity, then that limitation created by equity, called *laches* would apply." In *Key* v. *Hughes,* 32 W. Va. 184, (Syl. 3), it is held: "Where the relation of parties is that of trustee and *cestui qui trust,* the statute of limitations does not commence to run until there has been an open denial and repudiation of the trust, by the trustee brought home to the *cestui qui trust* in such a manner as will require the latter to act as upon an asserted adverse title." This was a case where a direct trust existed, the acknowledged relation of trustee and *cestui qui trust;* in case at bar except by implication there was no such relation between Dellicker and the creditors of Foster. Dellicker had received from the trustee of such creditors the money as in payment of a debt owing to him by the trustee and so carried into the settlement of the trustee and filed and recorded in the clerk's office of the county court of the proper county, where it had stood on the record more than five years before any action was taken to hold Dellicker as trustee, a standing repudiation of the idea of

the relation of trustee and *cestui qui trust.* While all this is true as far as it applies to a proceeding directly against Dellicker to recover back the money returned to him by Saunders on the 25th day of June, 1887, and the statute of limitations is applicable; yet on the 11th day of April, 1889, on the sale of the land in Ohio it was clearly the duty of Saunders, the trustee, to have refunded from the proceeds thereof to the general trust fund a sufficient amount, after first applying thereto the net amount realized and saved to the said trust fund from the sale of said personal property, to have repaid the money borrowed and returned to Dellicker and the bank, which had been used to compromise and pay off prior liens on the Ohio land and personal property and which had enured to the benefit of Dellicker as subsequent lienor, said trustee being subrogated to the rights of said prior liens and said Dellicker having so received directly from the trust fund money to which he was not entitled, the arguments of counsel for appellees and authorities cited are applicable to this phase of the case. The decree against Dellicker should be reduced by the net amount of the proceeds of the sale of the personal property in Ohio realized, which went into the general trust fund and represented that much saved to said fund by the use of the money borrowed from Dellicker and the bank and was so much of said loan returned to said fund, and said decree against Dellicker should be increased by the sum of three hundred and five dollars and fifty-six cents taxes paid on the Ohio land and one hundred and twenty-three dollars and fifty cents commissions on the sale of the said land for which plaintiffs in the cross bill file a cross error, which several items should have been paid out of the proceeds of the sale of said land before any distribution to the appellant Dellicker on account of his mortgage; the said item of one hundred and twenty-three dollars and fifty cents commission being two per centum on the gross amount paid said Dellicker, and both of which sums were improperly charged against the general trust fund and should be refunded to said trust fund by said Dellicker, and the decree thus corrected should be re-entered and Dellicker's decree against Foster should be corrected accordingly. Appellant sets up another ground of demurrer. Plaintiffs in the cross bill who are assignees of the two thousand dollar note show in their cross bill that the note was assigned to them as collateral for the payment, not only of their respective

claims, but for the claims of some six or more other creditors of
Hustead named in their cross bill wherein the several claims and
amounts are set out, and it is alleged in the cross bill that while
the note is assigned for the benefit of all the creditors men-
tioned, the claims of plaintiffs are entitled to be preferred and
paid in full before the other named creditors can participate in
the benefits of the assignment.    Appellees contend that being
the only parties mentioned in the assignment as assignees they
are to be treated as mere agents for the collection and distribu-
tion of the money and the suit is properly brought in their
name, and cite 1 Bart. Chy. Pr., p. 225 and s. 49; 2 Per. on,
Trusts 874; and Dicey on Par. to Ac. p. 155, and claim the
other beneficial creditors named as being before the court by
representation.    Are the plaintiffs in the cross bill and the other
creditors whom they assume to represent "similarly situated?"
Plaintiffs in their bill claim a preference over them.    15 Enc.
Pl. &. Pr. 628, it is said: "Where parties anyone of whom would
have a right to come in by petition and be made a party, if neces-
sary to protect his interests, are allowed to be dispensed with on
account of their number, the parties of record ought to proceed
with the utmost fairness and good faith, and should not resort
to anything like sharp practice in procuring a final decree which
is to be binding on all."    *Campbell* v. *Railroad Co.,* 4 Fed. Case
No. 2366, 1 Woods (U. S.) 368.    And 15 Enc. Pl. & Pr., 629:
"To authorize one to sue or defend on behalf of himself and
others not named as parties, it is necessary that the party on
the record and the persons represented shall have a. common,
or at least a similar, interest in the subject matter of the litiga-
tion.    A party cannot stand as a representative of others to
whom his own interests are hostile and adverse," and authorities
cited.    In *Hallett* v. *Hallett,* 2 Paige (N. Y.) 15, it was held
that one of the several legatees, all of whose legacies were
charged upon real estate, could not file a bill in behalf of him-
self and the other legatees, but that all must be made parties in
their own persons.    All persons having distinct interests must
undoubtedly be brought into court."    *Hopkirk* v. *Page,* 12 Fed.
Cas. No. 6697, 2 Brock (U. S.) 20.    The claims of plaintiffs
in the cross bill are hostile to those of the creditors named as
co-beneficiaries, in that, plaintiffs claim priority for themselves
and to be paid in full before any benefits accrue to the other
said creditors, hence they are proper parties defendants to the

cross bill, therefore, the cross bill is defective in that regard and bad on demurrer.

The defendant J. P. Saunders, trustee, by his counsel says the court erred in holding that in the distribution of the proceeds of sale of the Ohio land it was his duty to have repaid the said sums of five hundred and forty-seven dollars, the money borrowed from the First National Bank of Parkersburg, and two thousand and eighty-eight dollars and eighty-four cents borrowed from Dellicker, he having in good faith repaid the same prior to the sale of said Ohio land, the five hundred and forty-seven dollars to the bank on the 28th of October, 1886, and the two thousand and eighty-eight dollars and eighty-four cents to Dellicker June 25, 1887, claiming that it was his duty to protect the property conveyed to him and that he had a right to borrow money for that purpose, having no money of the trust fund in hand at the time except seventy-six dollars, he had no other alternative but to borrow or let the property go, and whatever the personal property and the equity of redemption was worth to the trust estate would have been lost to it. Under the evidence as to the value of the Ohio property and the circumstances of this case the trustee was warranted in borrowing the money to save said property, there being a reasonable prospect of saving to the trust estate a considerable sum of money, and under the authorities rightly repaid it to the loaners out of the general trust fund. The money was used to compromise and pay off prior liens upon the property he was attempting to save by the use of the borrowed money, and when he had paid them he was entitled to be subrogated to the rights of said prior liens and when the proceeds arising from the sale of the property came to his hands as trustee it was certainly improper to pay it out to the holder of a subsequent lien, thus giving such subsequent lienholder all the benefits of the property saved at the expense of the trust estate, the subsequent lienor would have been no worse off with the trustee holding the prior liens than the original creditors and was not entitled to receive anything on his lien until the prior liens were satisfied. The trustee should have applied a sufficient amount of the proceeds of the sale of the land and personal property in Ohio, before distributing anything to the subsequent lien holders, to refund to the general trust fund the amount so used in compromising and paying off the said prior liens from the general trust fund, and without so

saving the estate from loss the payment of the money to Dellicker the subsequent lienor was a misappropriation of the general trust fund. The said Dellicker, who received the money thus improperly paid, is primarily liable and the trustee Saunders is secondarily liable therefor to said fund. Dellicker had loaned to the trustee two thousand dollars which had been repaid to him. How did he occupy a position different from any other person who might have been the owner of the subsequent mortgage of fifty-five hundred dollars on the land to give him the right of subrogation to the rights of the prior liens, having returned to him his two thousand dollars and interest the trustee, Saunders, was no longer under obligation to him therefor. Suppose the trustee had borrowed all the twenty-five hundred dollars from the bank and none from Dellicker and had repaid it out of the trust fund, it would probably never have occurred to Dellicker, the trustee, or anybody else that Dellicker would be entitled to the whole proceeds of the sale of the land, to the exclusion of the trustee who had with the trust funds settled the prior liens. The trustee was not repaying Dellicker the borrowed money out of the proceeds of the sale of the land, that had been paid back to him almost two years before, and he occupied precisely the same relation that any other subsequent lien holder would have occupied.

It is further contended by the trustee, Saunders, that the court erred in overruling his exception to commissioner Lininger's report in allowing but four hundred and fifty-five dollars and eighteen cents for commissions when he should have allowed eleven hundred and eighty-eight dollars and twelve cents, which was five per centum on amount received or collected by the trustee. Section 6, chapter 72, Code, provides in case of sale under deed of trust for security of debts or to indemnify surities the proceeds shall be applied "first to the payment of expenses attending the execution of the trust, including a commission to the trustee of five per centum on the first three hundred dollars and two per centum on the residue of the proceeds, then *pro rata* (or in the order of priority, if any, prescribed in the deed) to the payment of the debts secured," etc. This applies in all cases where the trustee has nothing to do in the premises except to make the sale where required and to execute the trust, but the same section contains a further provision covering such trust as that in case at bar where it is made the duty of the trus-

tee to take possession, control, management and administer the trust property and is intended to be placed upon the same footing with executors and administrators in relation to the property committed to his care. Such provision is as follows: "And in all cases where a debtor conveys all his property to a trustee for the benefit of his creditors; or when he conveys all his property except what is exempt from execution or other process, every such trustee shall settle his accounts before a commissioner of accounts of the county in which such land is recorded, and the provisions of chapter 87 of the Code of West Virginia, as amended, shall apply to such settlement as far as applicable." And section 17, chapter 87, says: "The commissioner in stating and settling the account shall allow the fiduciary any reasonable expenses incurred by him as such; and also, except in cases in which it is otherwise provided, a reasonable compensation in the form of a commission on receipts or otherwise." For more than a century, in Virginia and in this State unless in a case where there is special reason for allowing more, five per centum on receipts and disbursements has been the established compensation to fiduciaries generally where there is no other provision as in case of an ordinary deed for security of debts as above stated. · By making this second provision in section 6, chapter 72, the legislature recognized the difference in the duties devolving upon the trustee who should only be called on in case a sale was desired to be made and his duties under the other class of trust deeds where he is required to take possession and manage and administer the property. In *Taliafero* v. *Minor,* 2 Call, top of page 156, it is held: "Administrator allowed five per cent. commission on the amount of sales and debts received by himself, that allowance not being too great for selling and receiving, paying and accounting for the money, and risking the receipt of counterfeit paper." In *Fitzgerald* v. *Jones,* 1 Munf. 150: "Executor allowed seven and one-half *per centum* on all his receipts and disbursements, the real and personal estate having in obedience to direction of the will been kept together and managed by him." And in *Triplett* v. *Jameson.* 2 Munf. 242: "A commission of more than five *per centum* on amount of sales and collections ought not to be allowed an executor except upon peculiar circumstances." And in *Cavendish* v. *Fleming,* 3 Munf. 198: "An executor may reasonably be allowed a commission of ten *per centum* on moneys received

by him, where the debts were very small and numerous, and the debtors presumed to have been much dispersed." *McCall* v. *Peachy, Id.* 288; *Hopkins* v. *Bernard,* 4 Munf. 83; *Kee* v. *Kee,* 2 Grat. 117. Authorities might be multiplied but it is useless, the rule is well established that five *per centum* is the accustomed and ordinary commission allowed in such case, and it is with the commissioner or court in the exercise of a sound discretion, to increase it, if necessary to make a reasonable compensation. This exception of the trustee to the commissioner's report should have been sustained.

Plaintiffs in the cross bill file a cross error that the court erred in sustaining the exception of Saunders, trustee, to commissioner's report in disallowing the claims of Saunders against the trust estate for eighteen hundred and ninety-five dollars and forty-three cents. This was a claim provided for among the non-preferred or general creditors in the general deed of assignment, and seems to have been simply overlooked in reporting that class of claims or debts against the estate and does not pass upon the claim the one way or the other, instead of disposing of it the commissioner seems to have ignored or overlooked it. I can hardly think the exceptants seriously press this assignment of error, counsel in his brief says: "Documentary evidence was brought by Foster strongly impeaching the correctness of the account of Saunders, and this defense was in no way met by Saunders," but fails to point out the impeaching evidence, or show in what particular the claim is incorrect or to overcome the acknowledgment of Foster by his solemn act in the provision made for its payment in the deed of assignment. The exceptions both of the plaintiffs in the cross bill and of Saunders to the report of commissioner Lininger as to the amount of thirteen hundred and ninety-eight dollars and ninety-three cents due from Saunders, the first claiming that it should be more and Saunders claiming that it should be only six hundred and seventy-one dollars and forty-nine cents, have both been disposed of in former parts of this opinion, largely in that touching the commissions which should be allowed the trustee.

For the reasons herein given the decree of November 3, 1899, complained of is reversed, except insofar as it decrees the amounts due the several general creditors, but not including in said exception the plaintiffs in the cross bill, Hall & Beiler and W. S. Mackey and their co-beneficiaries as set out in their bill as to

said general creditors excepted, it is affirmed, and the cause is remanded for further proceedings to be had therein according to the principles herein stated, directions given, and the rules governing courts of equity.

*Affirmed in part.    Reversed in part.    Remanded.*